FRADLEY *v.* HYLAND.

(*Circuit Court, S. D. New York. December 1, 1888.*)

1. PRINCIPAL AND AGENT—LIABILITY OF PRINCIPAL — SETTLEMENT BETWEEN PRINCIPAL AND AGENT.

Where an agent, authorized by a principal to purchase supplies for the use of the principal, and instructed to purchase only for cash, purchases in his own name, upon credit, of a seller who supposes the agent to be buying for himself only, and the principal pays or settles with the agent for the supplies in good faith, supposing that the agent had purchased them for cash or upon his personal credit, he is not liable over again to the seller for the price of the supplies.

2. SAME.

The rule that a seller who deals with the agent of an undisclosed principal can, upon discovering the principal, resort to the latter for payment, unless by his conduct he has led the principal in the meanwhile to pay or settle with the agent, does not apply to a case in which the agent bought contrary to his instructions, and the seller gave credit to the agent supposing him to be the only principal, and the principal has in the meantime paid the agent.

(*Syllabus by the Court.*)

In Admiralty. On appeal from district court.

Libel by one Fradley against Hyland for supplies furnished one Gibson, respondent's agent in charge of a canal-boat. Decree for libelant as to the first cause of action, and respondent appeals.

*Josiah A. Hyland,* for appellant.

*Peter S. Carter,* for appellee.

WALLACE, J. The libel sets forth two causes of action for supplies purchased by one Gibson. The district court decreed in favor of the libelant upon the first cause of action, and dismissed the libel as to the other. The respondent in the court below is the appellant here, but the libelant, although he has not appealed from the part of the decree by which the libel as to the second cause of action was dismissed, cites the case of *Irvine* v. *The Hesper*, 122 U. S. 256, 7 Sup. Ct. Rep. 1177, and insists that he is entitled to urge that this court should decree in his favor as to that cause of action. The facts which appear in evidence are these: During the period in which the supplies were purchased, one Gibson, who was the owner, and was managing certain canal-boats of his own, was employed by the appellant, to manage certain canal-boats for the latter. Gibson was to obtain employment for the boats, and return the net

earnings monthly to appellant, after paying for all repairs and supplies, and deducting his own commissions. His instructions were not to obtain supplies upon credit, but, if not in funds from the earnings, to call upon the appellant. Monthly settlements of account took place between Gibson and the appellant, in which Gibson was allowed all items for supplies paid or contracted for by him against the earnings of the boats, and a considerable fund was always left in his hands by the appellant. Gibson ceased to act as appellant's agent September 1, 1886. The supplies were sold to him prior to that time. The libelant supposed that Gibson was the owner of all the boats he was managing, and dealt with him as such, selling him supplies for all indiscriminately, charging the price to him, and taking his notes from time to time, or those of one Isham, his clerk. The claim to recover the part of these supplies used on appellant's boats is the first cause of action set forth in the libel. One Kelly had also sold supplies to Gibson for the same boats, supposing that Gibson was the owner, and had received Gibson's notes, or notes of Gibson's clerk, for the amount. After these notes had matured, Gibson asked the libelant to pay them for him to Kelly, and the libelant did so, receiving new notes from Gibson for the amount. There was no assignment to libelant of Kelly's original demand against Gibson. The claim for the supplies thus sold by Kelly to Gibson is the second cause of action set forth in the libel. After Gibson ceased to act as agent for appellant, the libelant discovered that some of the supplies had been purchased for the appellant's boats, and, being unable to collect his demands of Gibson, made claim against the appellant therefor. Until then the appellant did not know of the transactions between Gibson and the libelant, or between Gibson and Kelly. The moneys left by appellant in Gibson's hands were at all times more than the amount of the libelant's demands, and Gibson was indebted to the appellant in more than that amount when he left the appellant's employ, and when this libel was filed.

As to the first cause of action no question is made by the appellant that it is not of admiralty cognizance, but he insists that he is not liable as a principal for the supplies sold to his agent by the libelant, under the circumstances of the case. The general rule is familiar that, when goods are bought by an agent, who does not at the time disclose that he is acting as agent, the seller, although he has relied solely upon the agent's credit, may, upon discovering the principal, resort to the latter for payment. But the rule which allows the seller to have recourse against an undisclosed principal is subject to the qualification stated by Lord MANSFIELD in *Railton* v. *Hodgson*, 4 Taunt. 576, and by TENTERDEN, C. J., and BAYLEY, J., in *Thomson* v. *Davenport*, 9 Barn. & C. 78. As stated by Mr. Justice BAYLEY, it is "that the principal shall not be prejudiced by being made personally liable if the justice of the case is that he should not be personally liable. If the principal has paid the agent, or if the state of accounts between the agent here and the principal would make it unjust that the seller should call on the principal, the fact of payment or such a state of accounts would be an answer to

the action brought by the seller, where he has looked to the responsibility of the agent." The principal must respond to and may avail himself of a contract made with another by an undisclosed agent. When he seeks to enforce a bargain or purchase made by his agent the rule of law is that, if the agent contracted as for himself, the principal can only claim subject to all equities of the seller against the agent. In the language of PARKE, B.: "He must take the contract subject to all equities, in the same way as if the agent were the sole principal," (*Beckham* v. *Drake*, 9 Mees. & W. 98,) and accordingly subject to any right of set-off on the part of the seller, (*Borries* v. *Bank*, 29 L. T. N. S. 689.) Thus the rights of the principal to enforce, and his liability upon, a contract of sale or purchase made by his agent, without disclosing the fact of the agency, are pre-cisely co-extensive, as regards the other contracting party, if the limita-tion of his liability is accurately stated in the earlier cases. The qualifica-tion of the principal's liability to respond to his agent's contract, as stated in the earlier authorities mentioned, was narrowed by the interpretation adopted in *Heald* v. *Kenworthy*, 10 Exch. 739, to the effect that the prin-cipal is not discharged from full responsibility unless he has been led by the conduct of the seller to make payment to or settle with the agent; and the doctrine of this case has been reiterated in many subsequent cases, both in England and in this country, where the agent did not con-tract as for himself, but as a broker, or otherwise as representing an un-disclosed principal. One of the more recent English cases of this class is *Davison* v. *Donaldson*, 9 Q. B. Div. 623. But, as is shown in *Arm-strong* v. *Stokes*, L. R. 7 Q. B. 599, the version of *Heald* v. *Kenworthy*, while a correct interpretation of the rule of the principal's liability, when applied to cases in which the seller deals with the agent relying upon the exist-ence of an undisclosed principal, is not to be applied in those in which the seller has given credit solely to the agent, supposing him to be the principal. This case decides that the principal is not liable when the seller has dealt with the agent supposing him to be the principal, if he has in good faith paid the agent at a time when the seller still gave credit to the agent, and knew of no one else. See, also, *Irvine* v. *Watson*, 5 Q. B. Div. 102. Under such circumstances it is immaterial that the principal has not been misled by the seller's conduct or laches into paying or set-tling with his agent. It is enough to absolve him from liability that he has in good faith paid or settled with his agent. In that case the court was dealing with a contract made by an agent which was within the scope of the authority conferred on him, but which was nevertheless made by the agent as though he were acting for himself as principal. In the present case Gibson had no authority at all to make a purchase upon the credit of the appellant. But as it appears that appellant, in the monthly settlements of account with Gibson, allowed him out of the earnings charges for supplies for which the latter had not actually paid, he must be deemed to have authorized Gibson to purchase supplies for him upon Gibson's own credit. Under the circumstances, if Gibson had purchased supplies, purporting to act as an agent of appellant in doing so, appel-lant, by consenting to their being used for his benefit, and by allowing

the price in his settlements with Gibson, would have been liable to those who sold to him upon the theory of ratification. But, as Gibson did not assume to act as agent in making the purchases, there is no basis for applying the doctrine of ratification.

Very different considerations govern the case in which an agent who assumes to represent an undisclosed principal buys of a seller upon credit, and one in which the agent assumes to be acting for himself, and the seller deals with him, and gives him exclusive credit, supposing him to be the only principal. In the first, if the agent has authority, express or implied, to buy upon credit for the principal, or ostensible authority to do so, upon which the seller relies, then, by the familiar rules of law, the contract is the contract of the principal, and is none the less so because the name of the principal does not happen to have been disclosed. The principal is bound by the acts of his agent within the scope of his real or apparent authority; and the seller understands that, even though he may hold the agent personally responsible, he may also resort to the undisclosed principal. But in the other, as the seller does not rely upon any ostensible authority of the one with whom he contracts to represent a third person, he can only resort to the third person as principal, and charge him as such, when the purchase is made by one having lawful authority to bind the third person. It is immaterial, in such a case, whether the contract is made by an agent who is employed, in a continuous employment or in a single transaction, by a principal, or whether he is one who may be deemed a general, instead of a special agent. "When the agency is not held out by the principal by any acts or declarations or implications to be general in regard to the particular act or business, it must from necessity be construed according to its real nature and extent; and the other party must act at his own peril, and is bound to inquire into the nature and extent of the authority actually conferred. In such a case there is no ground to contend that the principal ought to be bound by the acts of the agent beyond what he has apparently authorized, because he has not misled the confidence of the other party who has dealt with the agent." Story, Ag. § 133. It is therefore difficult to understand how, as an original proposition, it could be reasonably maintained that there is any liability on the part of one who has employed another to manage his interests in a business, or series of transactions, in which, as an incident, purchases of goods are to be made, has given him instructions not to purchase on credit, and has supplied him with funds to purchase for cash, to a seller who has sold to the person employed upon credit, and dealt with him as the only principal. *Taft* v. *Baker*, 100 Mass. 68. Of course he would be liable, and the instructions not to buy on credit would go for nothing, if he did not supply the agent with funds to pay for the necessary goods, because in that case the agent would have implied authority to buy them on credit. So, also, in a case which may be supposed, where a principal knows, or ought to know, that the agent is buying on credit in his own name, yet the principal takes all the income of the business without making any provision for payment to those who have trusted the agent, the principal would

be liable, because in such a case his conduct would be inconsistent with good faith, and he ought not to be permitted to avail himself of the benefits without incurring full responsibility for the agent's acts. But it is probably too late to consider the questions thus suggested upon principle; and it may be accepted as law that the seller, under the circumstances of a case like the present, upon discovery of the principal, can resort to and recover of him, if he has not *bona fide* paid the agent in the mean time, or has not made such a change in the state of the account between the agent and himself that he would suffer loss if he should be compelled to pay the seller. Story, Ag. § 291, 1 Pars. Cont. 63; *Fish* v. *Wood*, 4. E. D. Smith, 327; *Thomas* v. *Atkinson*, 38 Ind. 248; *Clealand* v. *Walker*, 11 Ala. 1058; *McCullough* v. *Thompson*, 45 N. Y. Super. Ct. 449; *Laing* v. *Butler*, 37 Hun, 144. In the case last cited the court used this language:

"Where the purchase has been made by the agent upon credit authorized by the principal, but without disclosing his name, and payment is subsequently made by the principal to the agent in good faith before the agency is disclosed to the seller, then the principal would not be liable."

According to these authorities, if it should be conceded that the facts in the present case warrant the inference that the appellant gave Gibson authority to buy either upon his own credit or upon the credit of the appellant, the libelant cannot recover. It certainly is not material that the appellant did not pay Gibson, or make any settlement with him, on account of the libelant's demands specifically. It is enough that he did settle with Gibson for, and allowed him to retain in his hands sufficient moneys to pay, all outstanding liabilities contracted by him for the appellant's benefit, including the demands of the libelant. At the time of the last settlement the appellant had paid the libelant's demands and all outstanding liabilities contracted by Gibson as between Gibson and himself, and this was before the libelant knew any principal in the purchases other than Gibson himself.

As respects the second cause of action, the case may be briefly disposed of without considering the question whether the libelant can be heard to urge that the decree from which he has not appealed ought to be reversed. The transaction was merely a loan from libelant to Gibson. Whether the appellant is liable as upon a loan made by his agent or not, his obligation is in no sense a maritime one, and cannot be enforced in a court of admiralty. The libelant did not, by paying the notes to Kelly, and receiving Gibson's notes for the amount, succeed to any rights which Kelly may have had to enforce a claim for the supplies. The libel is dismissed, with the costs of this court and of the district court.