NATIONAL BANK OF COMMERCE *vs.* WILLIAM F. MEADER and others.

### April 2, 1889.

**Partnership—Money Borrowed for Firm—Misappropriation by Partner.**—If a member of a copartnership borrows money in behalf of his firm, the liability of the firm is not affected by the fact that the partner afterwards misappropriates the money to his own purposes.

**Same—Money Borrowed by Partner, but Used for Firm.**—If one who is a member of a copartnership borrows money on his own account, the credit being given to him, the fact that he afterwards applies the money to the purposes of the firm will not render the latter liable therefor.

**Same — Dissolution — Subsequent Admission by Partner.**— After the dissolution of a partnership, an admission by one of the members does not bind the others.

**Evidence—Memorandum made by Witness.**—A written memorandum of a fact, made by one who, upon being called as a witness, testifies to the fact, is not competent evidence of such fact.

Appeal by plaintiff from an order of the district court for Sibley county, *Edson,* J. presiding, refusing a new trial after verdict in favor

of the answering defendants, August Poehler, Henry Poehler, and Thomas Welch.

*A. B. Jackson* and *L. J. C. Drennen*, for appellant.

*Warner & Lawrence* and *S. & O. Kipp*, for respondents.

DICKINSON, J.[1]  This is an action to recover for money loaned by the plaintiff, in January and May, 1886, amounting to $20,000, for which promissory notes were given.  There is no question as to the liability of Meader and D'Absalmon, the other defendants alone interposing defence.  The plaintiff urges, notwithstanding the verdict of the jury in favor of the last-named three defendants, that the circumstances attending the loan and the use of the money were such as to charge them with liability as partners with Meader and D'Absalmon.  Error is also assigned in respect to the charge of the court.

The evidence goes to show that during the period covering the transactions in question, Meader and D'Absalmon were partners, owning and operating several grain elevators or warehouses, dealing in grain, and doing a general grain commission business at Minneapolis; the business of this partnership being done under the firm name of W. F. Meader & Co.  By the purchase of a part interest they had also become, and continued to be, partners with the three other defendants doing business under the name of the Pacific Elevator Company.  The last-named partnership also owned and operated a large number of grain elevators in different parts of Minnesota and Dakota, receiving, storing, and shipping grain, and also buying and selling grain to a very large extent.  The loans in question, with many others of which we need not speak particularly, were made upon the application of W. F. Meader, the notes of W. F. Meader & Co. being discounted by the plaintiff, and the proceeds placed to the credit of W. F. Meader & Co. in their general deposit account with the plaintiff bank, and were disbursed upon checks given in the name of that firm.  The Pacific Elevator Company employed the firm of W. F. Meader & Co. as a commission house to sell its grain.  Very large shipments were made to that firm at Minneapolis for sale, and for

[1] Vanderburgh, J., took no part in this decision.

their services an agreed price per bushel was charged. The proceeds of wheat sold were deposited by W. F. Meader & Co. to their general credit with this bank, and by checks drawn thereon remittances were made from time to time to the Pacific Elevator Company. The cashier of the plaintiff testified, in substance, that the bank was induced to make these loans by the representations of Meader that all of these defendants were partners with him in the firm of W. F. Meader & Co. This evidence is claimed on the part of the plaintiff to be of conclusive effect, because it was not opposed by any direct testimony, Meader not having been a witness upon the trial. We do not, however, deem that this testimony was thus conclusive, in view of certain other facts presented in evidence, to which we need not particularly refer, since, for reasons disconnected from that, we think that a new trial must be allowed. In brief, the case presented facts going to support either, on the one hand, the theory that in borrowing these funds Meader acted in behalf of the firm comprising all of these defendants, the Pacific Elevator Company; or, on the other hand, that both in making the loans, and in the subsequent disposition of the funds, he acted only in behalf of the firm of W. F. Meader & Co.

Without commenting further upon the evidence, to which we have thus referred only for the purpose of making clear our decision concerning the error assigned respecting the charge of the court, we now refer more particularly to that. In the course of its charge to the jury, the court said: "Now, it is the duty of the plaintiff to show that this business transacted by W. F. Meader & Co. was wholly connected with the business of the Pacific Elevator Company; that is, that they borrowed money and gave checks for large amounts, and that they deposited large amounts of money, for the use of the Pacific Elevator Company." To this exception was taken. It is difficult to understand just what meaning was intended to be conveyed by this language. Ascribing to it the only meaning which it can reasonably be regarded as bearing, it was erroneous. Its apparent import is that, in order for the plaintiff to recover, it must show that the transactions of W. F. Meader & Co. concerning the loan and use of the money in question were wholly connected with the business of the Pacific Elevator Company, or, in other words, that in all this busi-

ness W. F. Meader & Co. were acting as the agents of, or in behalf of, the Pacific Elevator Company. The latter part of the sentence quoted, explanatory of what goes before, as appears from the words "that is" which connect the two clauses, indicates that the "business" thus referred to by the court included the borrowing, depositing, and disbursement of the money in question; that is, that this must have been "for the use" of the Pacific Elevator Company. The possible harmfulness of the instruction that this business must have been wholly connected with that of the Pacific Elevator Company, to enable the plaintiff to recover, is apparent when it is considered that the evidence would have justified the conclusion that Meader and D'Absalmon made the loans in behalf of the Pacific Elevator Company, but that they misappropriated the funds to their own purposes, in part at least. The remainder of the charge is not so clear and explicit in its statement of the law as to justify us in saying that the jury could not have been misled by that part of the charge to which we have particularly referred; and for this reason a new trial must be granted.

We state the following legal proposition, which may become applicable upon a further trial of the cause, and concerning which the parties seem not to be agreed, viz.: If W. F. Meader & Co. discounted these notes and made these loans for their own purposes, not acting nor representing themselves as acting in behalf of the Pacific Elevator Company, and if the loan was made and credit given only to the partners composing the former firm, the fact that they afterwards applied the money for the benefit of the Pacific Elevator Company would not make these appellants, members of that firm, liable. *Emly* v. *Lye*, 15 East, 7; *National Bank of Salem* v. *Thomas*, 47 N. Y. 15; *Green* v. *Tanner*, 8 Met. 411; *Lill* v. *Egan*, 89 Ill. 609; *Guice* v. *Thornton*, 76 Ala. 466; *Farmers' Bank* v. *Bayless*, 35 Mo. 428, 41 Mo. 274; *Peterson* v. *Roach*, 32 Ohio St. 374; *Norwalk Nat. Bank* v. *Sawyer*, 38 Ohio St. 339; 1 Lindl. Partn. 189; 1 Bates, Partn. § 446. Such a case is distinguishable from one where a contract is made or debt contracted in behalf of a partnership, although without authority, and where the partnership receives the benefits of it. It is distinguishable also from the case where a partner, acting as the

agent of his firm, contracts for the benefit of the partnership, but only in his own name, the partnership receiving the benefits.

The answer of Meader and D'Absalmon, interposed in another action in May, 1887, was not competent evidence against these respondents as an admission of the facts therein stated, the partnership having then been dissolved. It was properly excluded.

The written memorandum of the plaintiff's cashier, of statements said to have been made to him by Meader, was properly excluded. The witness was able to and did give in evidence, by his own testimony, what Meader is claimed to have said, and the memorandum of the conversation made by the witness was incompetent.

For the reason already stated, the order refusing a new trial is reversed.