## Anna Hoffman, Defendant in Error, v. Wellington T. Stewart et al., trading as Col. W. A. Thompson Co., Inc., Plaintiffs in Error.

### Gen. No. 18,332.

1. PARTNERSHIP, § 269*—*persons liable as partners on contracts made prior to formation of partnership.* Persons advancing money under an agreement to join with another in a theatrical business previously conducted by the latter, the parties having in contemplation the organization of a corporation which was never in fact organized, *held* liable as partners on a prior contract for the services of one of the players.

2. PARTNERSHIP, § 269*—*rule as to liability of incoming partner on prior contracts.* Though, as a rule, a person who enters into a partnership with another does not become liable to the creditors of his partner for anything done before he became a partner, there are exceptions to the rule. One is that where a contract made by a person or firm remains executory until a partnership is created or a new partner is admitted into the firm, and such contract, while it remains executory, is adopted by the incoming partner, who acquires all the benefit as if he had been a partner in the original transaction, a promise may be implied to assume the liability of the partner or firm on such contract.

Error to the Municipal Court of Chicago; the Hon. JOSEPH Z. UHLIR, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed December 22, 1913.

**Statement by the Court.** The plaintiff, Anna Hoffman, recovered in the Municipal Court a judgment against Thompson, Stewart and Marhoefer for one hundred and three dollars for services as prima donna at the Angelus Theatre rendered from September 2 to October 1, 1911, at forty-five dollars a week, less a credit of eighty-seven dollars, to reverse which Stewart and Marhoefer prosecute this writ of error.

July 18, 1911, plaintiff and defendant Thompson entered into a contract in writing, wherein it was agreed that plaintiff should render services to Thompson as prima donna for a period of not less than ten months, commencing September 2, 1911; that Thompson

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

should pay her therefor forty-five dollars per week and that the contract would be terminated by giving two weeks' notice. Thompson did business under the name of the Thompson Opera Company and had a lease of the theatre, contracts with players for the season beginning September 2, advertising matter, programs for the first performance, etc. About August 25 he decided to change the name of his theatrical business from the Thompson Opera Company to the Col. W. A. Thompson Company, incorporated, and caused an application for a license to form a corporation under that name to be prepared and forwarded to the Secretary of State. He found, as the day fixed for the opening approached, that he could not open unless he secured a considerable sum of money, and said to Stewart that he wanted to get some one to join him in the venture. Through Stewart he met Marhoefer, and the three entered into a written contract dated September 1, which recited that Thompson had a lease of the Angelus Theatre and was the owner of the Thompson Opera Company, and provided that Thompson should be president and general manager of the company at a salary of fifty dollars per week, and Stewart treasurer at a salary of twenty dollars per week; that the funds received from the business should be deposited in a bank and drawn out on checks signed by Thompson and countersigned by Stewart; that it was understood that Thompson had invested "in this proposition" sixteen hundred dollars, Stewart fifteen hundred dollars, and Thompson and Stewart represented to Marhoefer that on the "investment" by him of fifteen hundred dollars that said sum, together with the sums invested by them, would pay the debts "incurred in this enterprise" up to the date of said agreement; that it was further agreed that the fifteen hundred dollars "hereby invested" by Marhoefer should be a first lien on the property of the Thompson Opera Company and the leasehold of said theatre; that Thompson should re-

ceive three thousand dollars of the capital stock of the Thompson Opera Company, Stewart fifteen hundred dollars and Marhoefer fifteen hundred dollars, and that the remaining four thousand dollars of the capital stock of said company should be treasury stock. Stewart and Marhoefer each paid fifteen hundred dollars, which was deposited in a bank to the credit of the Col. W. A. Thompson Co., incorporated, and drawn out on checks signed in the name of that company by W. A. Thompson, President, and countersigned W. T. Stewart, Treasurer. September 12th, Stewart and Marhoefer advanced seventeen hundred and fifty dollars more and the following writing was executed:

"CHICAGO, Sept. 12, 191—.

For and in consideration of Seventeen hundred fifty Dollars advanced by E. H. Marhoefer & Dr. W. Stewart, in addition to what was previously advanced that the said Marhoefer and the said Stewart are to receive ($2,000) two Thousand Dollars each of the capital stock of the Thompson Opera Co. and Col. Wm. Thompson to receive Two Thousand Dollars in said Co. balance of stock to remain in treasury, said Col. Thompson to be paid a salary of one hundred dollars per week after the said Marhoefer and the said Stewart have been repaid all moneys advanced.

W. A. THOMPSON,
EDWARD H. MARHOEFER,
W. T. STEWART."

FRED C. HARBOUR and P. H. BISHOP, for plaintiffs in error.

G. M. PETERS, for defendant in error.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

From the evidence the trial court might properly find that the transactions between Thompson of the one part and Stewart and Marhoefer of the other part

Hoffman v. Stewart, 184 Ill. App. 66.

was not the lending of money by the latter to the former, but was the purchase by each of an interest in the theatrical business conducted by Thompson under the name of the Thompson Opera Company, and that the parties had in contemplation the organization of a corporation, of which a specified amount of the capital stock should be issued to each of said parties and the remainder should be treasury stock. No corporation was ever organized and the parties to the contract from the time it was made must be held to have been partners.

It is true that a person who enters into partnership with another does not thereby become liable to the creditors of his partner for anything done before he became a partner, yet there are exceptions to the rule. One is that where a contract made by a person or firm remains executory until a partnership is created or a new partner is admitted into the firm, and such contract, while it remains executory, is adopted by the incoming partner, who acquires all the benefit as if he had been a partner in the original transaction, a promise may be implied to assume the liability of the partner or firm on such contract. *Frazer v. Howe,* 106 Ill. 583; *Lucas v. Coulter,* 104 Ind. 81; *Watt v. Kirby,* 15 Ill. 200; *Hellsby v. Mears,* 5 B. & C. 504, 11 E. C. L. 539; *Ex parte Peele,* 6 Ves. Jr., 602-604.

In this case Stewart and Marhoefer knew that Thompson had made contracts with plaintiff and other players and knew that she and they were playing at the Angelus Theatre for the benefit of themselves and Thompson, and we think that the court might properly find that they became liable with Thompson to pay her for her services.

We think the record is free from error, and the judgment is affirmed.

*Affirmed.*