## J. C. MOORE v. SAMUEL S. THORPE AND OTHERS.[1]

June 9, 1916.

Nos. 19,756—(150).

**Partnership — evidence.**

1. Defendant Richardson-Kellett Company, a corporation, and the individual defendants, entered into an agreement by the terms of which the individual defendants were to furnish the money to purchase lands under an option held by the corporation, and to finance the sale of the lands; the corporation was to employ agents and manage the sale of the lands, the profits to be divided equally. This agreement construed and *held* to create a partnership between the corporation and the individual defendants.

**Same.**

2. That the corporation was to have exclusive charge of selling the lands is not important.

**Same — recovery by agent against partners.**

3. Plaintiff's contract to act as agent for the sale of the lands was made with the corporation only. There is no allegation that he knew that the individual defendants were interested in the enterprise. *Held* that this does not bar his right to recover of the individual defendants on the theory that there was a partnership.

**Corporation — ultra vires.**

4. The individual defendants cannot escape the liability of a partner by the plea that the corporation was not authorized to enter into a partnership.

Action in the district court for Hennepin county against Samuel S. Thorpe, Louie D. Richardson, William H. Taylor, Samuel C. Confer, Richardson-Kellett Company and Richardson-Kellett Land Company, to recover $105,266. From an order, Steele, J., sustaining the demurrer of defendants Thorpe, Richardson and Confer to the complaint, plaintiff appealed. Reversed.

*Selover, Schultz & Selover,* for appellant.
*Keith, Kingman, Cross & Wallace,* for respondents.

[1]Reported in 158 N. W. 235.

BUNN, J.

Defendants Thorpe, Richardson and Confer interposed a general demurrer to the complaint and to each of the causes of action attempted to be stated therein. The demurrer was sustained by the trial court, and plaintiff appealed from the order.

The ultimate question to be decided is whether the complaint states a cause of action as against the demurring defendants, either on the ground that they were partners with defendant Richardson-Kellett Company, the corporation with which plaintiff made the contract sued on, or upon any other ground.

The complaint alleged, as the first cause of action the following facts:

Defendant Richardson-Kellett Company is a Minnesota corporation, hereinafter called "Kellett Company." It had on May 21, 1909, an option from one St. John to purchase 8,600 acres of Florida land, but was unable to make the purchase for lack of ready funds. It then entered into an agreement with defendants Thorpe, Richardson, Taylor and Confer, hereinafter called the "individual defendants." This contract is not set out haec verba, nor is a copy attached to the complaint as an exhibit, but the pleader attempts to state its provisions, as follows: The individual defendants were to advance whatever funds were needed to complete the purchase of the lands under the St. John option, and Kellett Company was to turn over to the individual defendants, or hold for their benefit and its own, or turn over to a corporation to be formed by the individual defendants in case they desired it, the said option and whatever title to said lands it might meanwhile obtain thereunder. It was further then agreed between said parties, quoting the language of the complaint, "that they would and they thereby did enter into a partnership or joint adventure respecting said lands upon the following terms and conditions." These "terms and conditions," as the complaint sets them forth, are as follows:

The Kellett Company to furnish its said option for the joint account. The individual defendants to furnish all moneys needed to finance the purchase and resale of said lands. Kellett Company to sell same for "the syndicate," furnishing and paying all office rent and clerical assistance, as well as its best efforts and that of its officers and selling force. Kellett Company to sell at best prices obtainable, at not less than $25 an acre,

without interest, on monthly instalments of not less than $7.50 per month. Kellett Company to make all collections, to make a regular monthly report of same to individual defendants. Kellett Company to employ subagents, and to pay out of funds received from sales the commissions of such subagents, to make advances to same out of funds received from sales so made, paying from such funds all expenses incurred in making sales. All disbursements made by the individual defendants for taxes upon the lands, for abstracts, for recording, attorneys' fees, expense of forming themselves into a corporation, at their option, and all other expenses incident to the handling of the lands, were to be paid by the Kellett Company from moneys received from sales. Kellett Company was to have a drawing account of $400 per month from said funds, and to account to "the syndicate" for such balance as it might have on hand from collections, after disbursements of the above items of cost and expense, and remit same to the individual defendants monthly until the following items should be remitted in full: (a) The entire purchase price of the land; (b) the amount retained by Kellett Company as drawing account; (c) interest at 6 per cent on all sums paid by the individual defendants for the land. When these payments had been made, a dividend was to be made of the remainder, of which 50 per cent should be paid to the individual defendants, and 50 per cent to Kellett Company. Contracts for the sale of the land were to be made in the form of an application, a receipt for the first payment, and a certificate of acceptance; copies of these were attached to the complaint. The application is to the Kellett Company, and the receipt and acceptance are to bear the signature of that company, the individual defendants in no way appearing in the transactions between the Kellett Company and the purchasers, or in the contracts between the company and its subagents. The individual defendants were to cause proper deeds to the lands sold to be executed and delivered on demand when the buyers should have made full payment. The foregoing is a full statement of all of the allegations of the complaint relative to the contract between the Kellett Company and the individual defendants. The statement to the effect that the parties thereby entered "into a partnership or joint adventure," and the use of the word "syndicate" in referring to the parties, should be treated as the conclusions of the pleader, and the question whether the contract constituted a partner-

ship or joint adventure is to be decided from the specific allegations in the complaint as to its provisions.

The complaint then alleges that in August, 1909, said agreement was confirmed and continued by said parties thereto, by an instrument in writing as alleged, except the division of the net profits, which was changed to 55 per cent to the individual defendants and 45 per cent to Kellett Company. Title to the lands was obtained and paid for under the St. John option, and was held for a time by Richardson-Kellett Land Company, a corporation formed in February, 1910, by the individual defendants under their option to do so. This corporation, hereinafter called the Land Company, then entered into a contract with Kellett Company which embodied the terms of the contract between the individual defendants and Kellett Company, the Land Company assuming and ratifying the previous engagements of the individual defendants. Then follows an allegation that Kellett Company, during all the time since May 21, 1909, has been acting with relation to said lands as the partner and agent of the individual defendants and of the Land Company. This allegation is entitled to no weight in the decision of the question of the relation between the parties, as it is purely a conclusion of the pleader. It is then alleged that during this period Kellett Company has employed many agents under the agreement; has received thousands of applications and large sums of money from the applicants; has advanced to agents large sums out of money so received; has paid large sums on account of expenses; has procured from the individual defendants and the Land Company large numbers of deeds and delivered them to purchasers who had made complete payment; has on numerous occasions accounted to the individual defendants and the Land Company for all moneys received by it from sales.

The complaint then alleges that on May 21, 1909, the said defendants, acting through Kellett Company, made, executed and delivered to plaintiff a contract in writing, a copy of which is attached to the complaint as an exhibit. This contract forms the basis of the claim of plaintiff that a large sum is due him for unpaid commissions earned by himself and his subagents, who have assigned their claims to him. It is dated May 21, 1909, executed by plaintiff and Kellett Company only, and no mention is made of the fact that anyone other than Kellett Company had an in-

terest in the land, or was to be in any way responsible for the commissions to be earned by plaintiff or his subagents. It provides for a commission of $50 for each "unit," or ten acre tract, sold, payable five dollars upon application, and five dollars when the applicant should make each of his payments from the third to the tenth. In addition to this, plaintiff was to have 20 per cent of all consideration received over and above the amount of schedule prices, to be paid after the tenth monthly payment. Plaintiff's employment was not confined to the sale of these particular lands, but was general, and the statement of the second cause of action shows that Kellett Company had other land in Florida which plaintiff was employed to sell. Under this contract plaintiff appointed various subagents, making a contract for commissions with each, and plaintiff and his subagents obtained and turned over to Kellett Company a large number of applications, all of which were accepted and receipts and certificates duly issued by Kellett Company. (The complaint says that these applications were turned over to "the defendants," and that "said defendants," through Kellett Company, issued the receipts and certificates of acceptance, but no inference seems warranted that anyone but Kellett Company had anything to do with these matters). The purchasers made at least ten payments on their contracts. A statement of the sales made by plaintiff and his subagents, with the amount of commissions earned, is attached to the complaint. It shows sales of the greater part of the 8,600 acre tract, and commissions earned of $96,316, which, with the exception of about $6,000 paid, is alleged to be due and owing to plaintiff from defendants.

The second cause of action is for commissions on sale of portions of the same tract of land by Kellett Company to purchasers procured by plaintiff and his subagents for certain other lands in Florida which Kellett Company had under contract with the owner, these last sales being canceled by Kellett Company, and the purchasers induced to take instead portions of the first tract. It is unnecessary to further refer to this cause of action, as it presents no question that is not involved in a consideration of whether the demurrer to the first cause of action was rightly sustained.

The first ground upon which plaintiff insists that the individual defendants are liable for his commissions is that they were partners with the Kellett Company in the undertaking, or, if there was not strictly a

partnership, that there was a joint undertaking which renders them liable. Undoubtedly some of the elements of a partnership existed. The individual defendants furnished the money to buy the lands, Kellett Company the option. The individual defendants furnished the money necessary to finance the sale of the lands, Kellett Company the labor of selling. The individual defendants were to be repaid their investment with interest, and the profits were to be divided between them and Kellett Company. Thus far the arrangement bears a strong resemblance to a partnership. But other features of the contract lessen the resemblance, and give color to the claim of respondents that there was no partnership, no joint undertaking in the nature of a partnership. There is not a word in his contract that indicates that plaintiff is employed by any one but Kellett Company, or is to look to any other source for his commission. While the individual defendants and the corporation to be formed by them agreed to give deeds to the purchasers secured by Kellett Company or its subagent, they had no control over the price or terms except that the contract provided the land was not to be sold at less than $25 per acre and the instalments were not to be less than $7.50 per month. Kellett Company was to hire subagents and to pay them out of the proceeds of sales. They could hire whom they chose, and discharge them if their services were unsatisfactory. No provision of the contract gives the individual defendants any thing to do with the matter of disposing of the lands.

If Kellett Company and the individual defendants were partners as between themselves, they were partners as to third persons. On the other hand, if they were not partners as between themselves, they are not liable as such to plaintiff, as there is no estoppel or holding out in the case.

Whether this agreement constitutes a partnership cannot be determined by any arbitrary test. It depends upon the intention of the parties, and this intention, in the case at bar, must be gathered from the allegations of the complaint as to what the terms of the agreement were, and the conduct of the parties in reference to the matter.

If these allegations show that the parties "intended to combine their property, labor and skill in an enterprise as principals for the purpose of enjoying the profits," it establishes a partnership. The question always is, was there a joint business, or were the parties carrying on the business as

principals and agents? McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760; McAlpine v. Millen, 104 Minn. 289, 116 N. W. 563.

It is not open to serious doubt that the parties to this agreement intended to combine their property, labor and skill in an enterprise for the purpose of enjoying the profits. And they did so as principals. The individual defendants contributed to the enterprise their money, Kellett Company the option it held, and its labor and skill in the work of exploiting and selling the lands. They were to share equally in the profits. It is true that this is no longer considered a conclusive test. McDonald v. Campbell, supra. But it is still strong evidence of a partnership. It seems to us that the enterprise was a joint business, and not merely one where one of the parties was the principal, and the other agent. They were both principals, and, of course, each was agent for the other. It is clear enough that the individual defendants would have a proprietary interest in the profits when ascertained and before division. They did not merely loan their money to Kellett Company, but had an actual interest as a principal in the undertaking.

It is not important that the indivdual defendants had nothing to do with selling the lands, beyond the right to insist on at least the minimum price and monthly payments, and the duty to execute and deliver deeds to the purchasers. The management of the business, including the extent to which the several parties shall participate, is a matter which may be regulated by the agreement. One of the parties may be invested with the exclusive management of the business, or of a particular branch thereof. McAlpine v. Millen, supra.

That plaintiff made his contract with Kellett Company individually does not necessarily exonerate the other parties. The complaint does not show that plaintiff knew of the partnership, and therefore knowingly and voluntarily elected to give credit to one only. Unless plaintiff knew that the individual defendants were principals in the enterprise, and intended notwithstanding to give exclusive credit to Kellett Company, he may recover of the afterdisclosed partner, on the same principle as applies in the case of an undisclosed principal. Tyler v. Waddingham, 58 Conn. 375, 20 Atl. 335, 8 L.R.A. 657. That the act of Kellett Company in making the contract with plaintiff was within its actual authority is plain from

the provision of the partnership agreement which gives it the authority to employ agents.

It is urged that Kellett Company, being a corporation, could not enter into a partnership. It is the general rule that corporations, in the absence of express authorization by statute, have no power to enter into partnership with individuals or other corporations or to make agreements which will create partnerships. 3 Thompson, Corporations, § 2336. But the authorities are in conflict. In French v. Donohue, 29 Minn. 111, 12 N. W. 354, this court referred to the rule, but held that where a corporation and another have assumed to enter into a partnership and jointly transact business together, they may recover, by reason of their joint interest, upon obligations made to them in their partnership name. Some cases hold that a corporation that has assumed to enter into a partnership cannot be held liable as a partner, while others hold the contrary. 3 Thompson, Corporations, § 2336, et seq. and cases cited. 10 Cyc. 1142. But in this case it is the individual who is seeking to escape liability as a partner, on the ground that the other party to the partnership agreement was incapable of entering into the relation. It seems to us that the individual cannot raise the question any more than could a debtor of the partnership, under the case of French v. Donohue, supra. The argument that a construction should be given to the contract that will make it legal, rather than one which will make it illegal, is a proper one, but is not determinative unless the construction sought is a fairly reasonable one.

Our conclusion that, assuming the allegations of the complaint to be true, a partnership was created and existed between Kellett Company and the individual defendants, and that the complaint states a cause of action as against the defendants who demurred, has been reached after much consideration, and an examination of the authorities cited in the briefs and many others. The cases of Baremore v. Selover, Bates & Co. 100 Minn. 23, 110 N. W. 66; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914 C, 689, and Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476, are quite persuasive in favor of the conclusion reached. The other cases in this state are cited in 2 Dunnell, Minn. Dig. § 7346, et seq. Dunnell, Minn. Dig. 1916, § 7346, et seq.

The order appealed from is reversed, with permission to respondents to apply to the trial court for leave to answer the complaint.