# BOWMAN & STEADMAN v. FARMERS STATE BANK OF PINE RIVER.[1]

July 9, 1926.

No. 25,523.

**When party to contract in name of one partner may resort to partnership.**
Where a contract is made by a partner in his name only, but in fact for the firm and for its benefit, and it actually receives the benefit, the other contracting party subsequently discovering the real party, to-wit, the copartnership, may abandon his right to look to the partner personally and resort to the copartnership. This is upon the theory that every partner is the agent of the copartnership for the purposes of its business.

Partnership, 30 Cyc. p. 477 n. 47; p. 484 n. 69, 70 New; p. 485 n. 77.

---

See 20 R. C. L. p. 892.

Action in the district court for Cass county to recover proceeds of two drafts. The case was tried before Wright, J., who ordered judgment in favor of plaintiff. Defendant appealed from an order denying its motion for a new trial. Reversed.

*E. L. Forbes* and *Daniel DeLury,* for appellant.
*Mal Clark,* for respondent.

WILSON, C. J.
Appeal from an order denying a motion for a new trial.

For some time prior to December 10, 1923, one Bowman operated a meat market at Pine River and carried a checking account with appellant. He was also engaged in buying and selling live stock and for this branch of his occupation he carried with appellant a separate checking account known as the "cattle account." Apparently Bowman's capital was limited. The bank permitted him to buy cattle and draw checks in payment when he had insufficient funds in the cattle account. In anticipation of this Bowman gave

[1]Reported in 209 N. W. 863.

the bank promissory notes in blank with authority to fill in the amount and credit to his "cattle account" when it desired to eliminate the overdrafts. The arrangement between Bowman and the bank required the drafts received from the sale of cattle to be deposited to this account and used to pay such notes. Business was carried on in this way for several years.

On December 10, 1923, one Steadman and Bowman agreed to become partners in the buying and selling of live stock. Each was to contribute one-half the necessary capital and share equally in the profits and losses. Steadman did business at another bank. He bought cattle and paid for them with his individual checks. Each was to contribute the necessary money to pay for his purchases. Bowman followed his usual custom with defendant bank. A $1,500 note was used. The bank thought it was loaning money to Bowman. The money so loaned was used by Bowman in paying for cattle bought for the copartnership. The cattle bought by the two partners were shipped to South St. Paul. Steadman then advised the bank of the existence of the copartnership. The drafts aggregating $1,742.56 for the cattle were sent in the name of Bowman and the bank credited his cattle account and used $1,434.56 to pay on the $1,500 note, leaving $308 which was paid to Steadman by a check from Bowman.

The partnership bought and sold but four carloads of cattle. The plaintiffs received and settled between themselves the proceeds of the first two carloads.

This action was brought in the name of the copartnership to recover the $1,742.56. Perhaps the amount should have been $1,434.56. The court found that by mutual accounting between the partners Steadman was entitled to $907.59 and having received $308 he was entitled to judgment for $599.41, leaving Bowman's share applied upon the debt due the bank.

1. Every partner is the agent of the copartnership for the purposes of its business. G. S. 1923, § 7392. Where a contract is made by an agent, without disclosing his principal, and the other contracting party subsequently discovers the real party, he may aban-

don his right to look to the agent personally and resort to the principal. Dun. Dig. § 216. The money procured from the bank was used to pay for cattle bought for the copartnership. The copartnership received the benefit of the money. The bank expected to be paid from the drafts representing the proceeds from the sale of the cattle. It acted in good faith. Bowman in his own name procured money to pay for the cattle. He was acting for the firm as shown by the use of the money. His contract with the bank was for the benefit of the partnership which used the money and had the benefit of the transaction. Indeed Bowman did not finance himself through the bank. It financed the copartnership but in the name of Bowman. It financed the business venture. In all reasonable probability it would not have done so had the custom and arrangement under which it was acting not necessitated the proceeds from the sale to be applied in extinguishing the debt. Clearly the bank could not have contemplated anything else. How the proceeds of the first two cars were withheld is not explained. It cannot be said that Bowman did what he had agreed with Steadman. He got the money with the help of the intrinsic or inherent element of safety or moral risk involved in having the proceeds of the shipment used to pay the debt.

Respondent relies upon the principle of law that if a partner borrows money on his own account, the credit being given to him, the fact that he afterwards applies the money to the purposes of the firm will not render the latter liable therefor. Nat. Bank of Commerce v. Meader, 40 Minn. 325, 41 N. W. 1043. But the court in the case cited distinguished it from a "case where a partner, acting as the agent of his firm, contracts for the benefit of the partnership, but only in his own name, the partnership receiving the benefits." This case seems to be without the rule announced in the Meader case and to be within the features therein distinguished. It follows as a matter of law that the money was loaned to Bowman for an undisclosed principal. The facts do not support the claim that the loan was made to Bowman individually without regard to the business of the copartnership. He did not "afterwards" apply the

money to the purposes of the firm. This was done as the indebtedness was created and in the course of its business. If we were to say that Bowman borrowed the money for himself and applied it to the purposes of the firm, we must also say that when he bought an animal and gave a check for it which was honored by the bank in enlarging the overdraft it loaned the money to Bowman. This would mean that there were many individual loans. Upon such theory when did Bowman apply the money to the purposes of the firm? When the purchase was made and the check honored the particular transaction was complete. Nothing further could be done to pass the transaction to the firm. The very act had completed the transfer and the other partner could claim the property purchased as part of the assets of the firm. It was recognized and handled as such. It was such. The act of buying and paying for the cattle was inherently the business of the copartnership. The debt was created in the very act that was the purpose of the firm's existence. The fact that the note was so made and used did not change the character of the debt which was that of the firm though made in the name of the partner without disclosing his real principal.

Reversed.