AMERICAN FUND FOR PUBLIC SERVICE, INC. v.
ASSOCIATED TEXTILES, INC.
MERCANTILE STATE BANK, INTERVENER; JAMES L.
O'DONNELL, APPELLANT.[1]

November 18, 1932.

No. 28,986.

[1]Reported in 245 N. W. 376.

*Leonard, Street & Deinard* and *Hyman Edelman,* for appellant.
*Tifft & Youngdahl,* for respondent.

HOLT, J.

Findings of fact and conclusions of law were in favor of intervener, and the receiver of the Associated Textiles appeals from the order denying his motion for a new trial.

In an action brought against the Associated Textiles, a corporation, by one of its creditors, the court appointed appellant receiver. The receiver gave due notice to creditors to file claims. The time to file claims expired, and thereafter respondent asked the court to be allowed to intervene and file its claim. Permission was granted over the receiver's objection and exception. Issue was joined upon the intervener's complaint, a trial was had, and findings made as stated.

The first error assigned is that the court lacked authority, after the expiration of 18 months (after notice had been given to file claims) to extend the time and permit a claim to be filed; and, even if the court possessed such authority, that it was an abuse of discretion to exercise it. The action wherein these proceedings were had was brought by a judgment creditor of the Associated Textiles for sequestration of its assets under G. S. 1923, § 8013, as amended, 2 Mason, 1927, id. and not under § 8015. It is true that § 8023, in regard to time for filing claims, was held applicable to both sequestration (§ 8013) and dissolution (§ 8015) in Cohen v. Mirviss Mfg. Co. 178 Minn. 20, 226 N. W. 198. But the exercise of the court's discretion to extend the time for filing claims does not appear to be cut off by the last clause in this sentence in § 8023:

"No claim or demand shall be received or allowed after the expiration of the time so limited, except by permission of the court for good cause shown, and upon notice to the receiver, but in no

case unless presented within eighteen months from the date of adjudication and before final settlement."

· For in this sequestration proceeding it does not appear that there has been an adjudication, unless the order appointing a receiver be considered such, nor had there been a final settlement. So it must be concluded that the court had the power to let intervener file its claim. And in the exercise of that power in granting the application there appears no abuse of discretion. Absolutely no prejudice is shown to the receiver in meeting the claim at the time it was heard instead of within the time fixed for filing claims. For "the district court has a wide discretion with respect to the filing of claims after the expiration of the time limited for that purpose." Matchan v. Phoenix L. I. Co. 159 Minn. 132, 139, 198 N. W. 417, 420.

After the respondent was permitted to file its claim, in the form of a complaint in intervention, stating four causes of action alleging certain facts which led intervener to accept four promissory notes for loans, in which notes Minneapolis Woolen Mills Company was maker and H. R. Naftalin indorser, and also alleging that the Associated Textiles corporation was acting as an undisclosed principal of the Minneapolis Woolen Mills Company, having secretly succeeded to the latter's business and stock of goods and operated the same at the place of business of the Minneapolis Woolen Mills Company and in the latter's name, and that intervener had no knowledge thereof at the time the notes were given and accepted, the receiver answered, and the issues were carefully tried. The court made findings in favor of intervener, allowing said notes, amounting to $21,681.81 and interest, as a valid claim in the receivership of the Associated Textiles.

The sixth, seventh, and eighth findings are attacked as unsupported. The substance of these findings may be stated thus: That about May 12, 1923, the Associated Textiles bought all the assets, good will, and business of the Woolen Mills; that from then on until after the execution of the notes set forth in intervener's complaint all the business of the Associated Textiles was transacted through

H. R. Naftalin as its general agent and manager in such manner and by such methods as would justifiably lead the public, including intervener, and did in fact lead the latter to believe that in dealing with Naftalin, who was then the president and manager of the Woolen Mills Company and who professed to act for the Woolen Mills Company, it was actually so dealing with the actual owner of the business, which was in truth the business of the Associated Textiles; that in taking said notes intervener believed and was justified in believing that it was taking the notes of the owner of the business, whereas said Woolen Mills, the maker of the notes, was, in giving them, the agent of the undisclosed principal, the Associated Textiles, for whose benefit the loans represented by the notes were in fact made; that subsequent to the making of the notes and prior to the discovery by intervener of the facts relative to this undisclosed agency the Associated Textiles disposed of its assets of $50,000 by transferring the same to Naftalin personally and to the Woolen Mills Company in discharge of obligations incurred under certain contracts, and rendered itself unable to meet its obligations to other creditors and to intervener. It is not necessary to go into the details of the business arrangements between these two corporations, principally owned and wholly managed by Naftalin, nor concerning two other corporations called into being by him during the time here involved, for the purpose, as far as disclosed in the record, of securing to him additional commission on sales or business and of holding profits. Stock to the public appears to have been sold only in the Associated Textiles. It is enough to say that a reading of the record will convince any impartial person that the findings referred to have adequate support. There were several contracts drawn relative to the dealings between the Woolen Mills Company, the Associated Textiles, and the Wellworth Mills Company. The trial court, referring to these corporations and Naftalin's powers and management, says:

"He had exclusive authority to buy and sell in the defendant's [Associated Textiles] business, and concurrent authority to finance; and in doing these he held himself out to the public as the agent

of the Woolen Mills or of the Associated Textiles as suited his convenience, with the full knowledge of the defendant [Associated Textiles]. When he signed the notes in question and their predecessors it was directly or indirectly to get funds for the Associated Textiles' business. One need not go far into the other evidence, after careful examination of the contracts, to see that as to the public generally he was the agent of an undisclosed principal—the Associated Textiles."

Appellant urges two legal propositions as defense to the claim. The first is that, there having been a settlement and adjustment of the dealings between the Woolen Mills Company and the Associated Textiles before the notes involved were taken and also an adjustment or settlement between the two on February 8, 1926, after the loans were made, no claim thereon can be asserted against the Associated Textiles by intervener; the second, that under the negotiable instruments act the Associated Textiles cannot be held because the notes do not purport to be its obligations.

Notwithstanding the so-called cut-off between Associated Textiles and the Woolen Mills Company on May 12, 1923, the loans now represented by the renewal notes set forth in intervener's complaint were negotiated by Naftalin and used to conduct the business of the Associated Textiles in the same place and in the same manner as the Woolen Mills Company had theretofore carried on its business, while neither the public nor intervener knew that the Woolen Mills Company had disposed of its assets and business to the Associated Textiles, as above found, and further the adjustment between the two corporations on February 8, 1926, bars the assertion of the claim against the Associated Textiles. Appellant urges that notwithstanding such finding no recourse may be had to the undisclosed principal, citing as authority an article by Professor Ames in 18 Yale L. Journal 443, and an article by Professor Lewis in 9 Colum. L. Rev. 116. Professor Ames concedes that the decisions are contrary to his logic, and certainly Professor Lewis does not sustain appellant, for in the last paragraph of his article he states [9 Colum. L. Rev. 135]:

"If the above conclusions are correct, the only anomaly in the branch of the law we have been discussing is that to be found in the cases which hold, that if the undisclosed principal has settled with the agent before the third person discovers his existence and identity, the third person is deprived of his right to treat the contract as with the principal."

In this case the record is not such as to require a finding that the money loaned by intervener and represented by the renewal notes in question was repaid to the Woolen Mills Company by Associated Textiles before intervener asserted its claim against the undisclosed principal, and the court finds specifically that it was not included in the so-called settlement of February 8, 1926. That being so, such authorities as Price-Evans Foundry Co. v. Southern Bell T. & T. Co. 19 Ga. App. 264, 91 S. E. 283; Thomas v. Atkinson, 38 Ind. 248; Montague M. M. Co. v. All-Package G. S. Co. Inc. 182 App. Div. 500, 169 N. Y. S. 920; Fradley v. Hyland (C. C.) 37 F. 49, 2 L. R. A. 749, have no application. However, the relations between the two corporations concerned and their common managing agent are such that it is difficult to conceive that any prejudice results to either if intervener pursues the undisclosed principal who received intervener's money. In 2 C. J. 847, the better rule is stated to be:

"The principal is discharged only where he has been induced to settle with the agent by conduct on the part of the third person leading him to believe that such person has settled with the agent or has elected to hold the latter."

We consider it of no importance whether this rule is applied or the one formulated by Judge Story, as quoted in York County Bank v. Stein, 24 Md. 447, 465, "that the principal will not be made personally liable, if, in the intermediate time, he has settled with his agent, without any suspicion of his own personal liability, or if he would otherwise, without any default on his own part, be prejudiced by being made personally liable"; for, under the findings of fact, the Associated Textiles may be held liable as undisclosed principal for the money loaned by intervener.

Had there been no evidence of the loans in the form of these notes, no question could well have been raised as to the liability of the Associated Textiles as the undisclosed principal. Bowman & Steadman v. Farmers State Bank, 168 Minn. 221, 209 N. W. 863. But it is asserted that the debt is now in the form of negotiable promissory notes, and by virtue of G. S. 1923 (2 Mason, 1927) § 7061, no one is liable on such instruments "whose signature does not appear thereon." The intervener's complaint is drawn on the theory that Associated Textiles was in fact doing business in the name of Woolen Mills Company, the agent thus appearing to be the owner; and that the loans were for the use of the undisclosed principal. And this tentative draft No. 4 of American Law Inst. Restatement Law of Agency, § 417, seems sound and in point here, where thus commenting upon the uniform negotiable instruments section corresponding with our § 7061, above referred to:

"* * * (a) If the principal is doing business in the name of the agent or in a fictitious name, the agent appearing to be the owner, the name signed by the agent may be the business name of the principal, and, if so, he becomes a party to the instrument if it is given by the agent in the ordinary course of business."

It is to be noted that the promissory notes evidencing that indebtedness always remained in the hands of the payee; they were never negotiated. And the trial court commented on that fact, saying:

"I confess I do not perceive any considerations which justly differentiate a promissory note in the hands of the original payee from any other simple contract in writing on which an undisclosed principal would be liable."

The case of Wm. Lindeke Land Co. v. Levy, 76 Minn. 364, 79 N. W. 314, is cited. Further on in his memorandum the learned trial court says that when Naftalin signed the notes in question in the name of the Woolen Mills Company he was the general agent of the Associated Textiles with authority to do this; to deposit the proceeds in intervener's bank in the name of the Woolen Mills Company; to draw on the deposit in the name of the Woolen Mills

Company for the use of the Associated Textiles' business, which was being conducted under the name of the Woolen Mills Company; and the court held that the Associated Textiles signed the notes in the trade-name of the Woolen Mills Company within the meaning of the last sentence of said §§ 7061, 7062. The last sentence of § 7061 reads:

"But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name."

Section 7062 is:

"The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

Appellant relies on Magee v. First Nat. Bank, 181 Minn. 294, 232 N. W. 336, a suit on a promissory note not signed by the demurring defendant. There were no allegations as to an undisclosed principal nor that the consideration or loan represented by the note went to said defendant.

We concur in the trial court's view of the facts and of the law as stated in the memoranda attached to the findings and to the order denying a new trial.

The order is affirmed.