### WYLL v. KENT.
### No. 11083.

Court of Civil Appeals of Texas. Dallas.
Nov. 26, 1932.

Rehearing Granted Jan. 7, 1933, and Judgment Reformed and Affirmed.

Wm. F. Bane and E. M. Reichman, both of Dallas, for appellant.

Alvin H. Lane, of Dallas, for appellee.

JONES, C. J.

In a suit by appellee, Willis Kent, against appellant, I. Wyll, in a district court of Dallas county, appellee recovered judgment in the sum of $5,242.20, with interest at the rate of 6 per cent. per annum, and also title to, and possession of, two prints of the motion picture film entitled "The Pace That Kills." An appeal has been duly perfected to this court, and the facts are as follows:

On May 4, 1929, appellee entered into a written contract with H. T. Peebles and Lee Riley, under the terms of which appellee leased to said parties, "The sole and exclusive right to exhibit and distribute to exhibitors for exhibition for theatrical purposes," for a period of three years, in the states of Texas, Oklahoma, and Arkansas, prints of the moving picture film known as "The Pace That Kills." The written contract is very lengthy and we will only state those provisions that are necessary to decide the issues of this appeal. The consideration for the use of the prints of such picture was that there would be paid to appellee "the total sum of fifty per cent of the gross revenue derived from the picture, after deducting the cost of the positive prints purchased. By gross revenue is meant the actual amount of money paid by the theatre for the use of the picture, whether payed on percentage or flat rate." The lessees were required, under the contract, to make monthly reports to appellee, and to make remittances of 50 per cent. of the gross receipts on the first day of each calendar month, for the preceding month.

Certain stipulations in section 6 of the contract, in effect, are: (1) That the lessee would not copy or duplicate any prints in its possession, or permit them to be copied or duplicated; (2) that lessees would not exhibit or permit such prints to be exhibited in any territory other than that allotted it under the contract; (3) that the lessee would not part with the possession of any of said prints, or any part thereof, except in accordance with the conditions of the agreement; (4) that if any prints, or any part thereof, leased to the lessee, are stolen or destroyed, it would notify lessor immediately and use all reasonable endeavor to recover the same; (5) that lessee would furnish lessor, within twenty-four hours of request therefor, with full information of the locations at any stated times of any prints of the pictures secured from the lessor; (6) that at the expiration of the lease period, lessee would return all prints, or furnish affidavit that they had been destroyed.

In paragraph 12 is contained the stipulation that: "It is further understood and agreed between the parties hereto that, by reason of the breach of paragraph 6 of this agreement, it would be impossible to ascertain the exact amount of damages that would accrue to the lessor by reason of any such breach, and the sum of Five Thousand ($5,000) Dollars is hereby stipulated and agreed between the parties as liquidated damages therefor." As above epitomized, paragraph 6 contains six conditions, the violation of any one of which would mature, in favor of appellee, a liquidated demand in the sum of $5,000. The written contract apparently was in force from May 4, 1929, approximately through the month of October, 1929.

Appellant was not a party to the written contract, but it is alleged by appellee that he purchased from lessees, a one-third interest in such contract and thereby became an equal partner with the lessees during the time the contract was in force. The contract of appellee with the original lessees, while dated May 4, 1929, had been agreed upon on or before April 11, 1929. Appellant's contract with Peebles and Riley is shown by the following instrument:

"April 11th 1929

"Mr. I. Wyll, Dallas, Texas

"Dear Sir:

"Confirming our conversation of this date, we have a contract for the distribution of two motion pictures, The Pace That Kills and Linda, for the states of Texas, Oklahoma and Arkansas, said contract being with Willis

Kent for the pictures to be distributed on a fifty-fifty basis for the producer.

"For the sum of eight hundred dollars we will give you a third interest in our contract with Willis Kent for the distribution of these two pictures, in other words, you are to receive one-third of the net profit derived from the distribution of these pictures.

"It is understood that no one shall receive any salary from this arrangement, with the exception of Lee Riley, who is to draw a salary of fifty dollars per week from date and this salary arrangement shall remain in effect for a period of six months and at that time a new arrangement, mutual to all partners shall be effected.

"It is also understood that all checks covering salary, office expense, rent, traveling expenses and all other expense connected with the distribution of the two pictures shall be signed by Lee Riley and shall in every instance be countersigned by H. T. Peebles.

"Yours very truly,

"[Signed]   Lee Riley
"[Signed]   H. T. Peebles

"Accepted:
"[Signed]   I. Wyll
"Issy Wyll."

It will be noted that, when the contract was put in writing, on May 4, 1929, the picture "Linda," mentioned in the letter, was omitted from such contract. Appellee alleged that appellant, by this contract, entered into between himself and Peebles and Riley, adopted the terms of the original lease contract and thereby became bound by such terms. It is alleged by appellee that, after the execution of the contract between appellant and Peebles and Riley, the firm name of "Special Pictures Company" was adopted, and the three partners did business under such name. In July, 1929, Riley sold his interest to Peebles and appellant. In the latter part of September, 1929, Peebles died, and appellant became the sole representative of the Special Pictures Company. When appellee was informed of the death of Peebles, he came to Dallas and demanded possession of the prints, which appellant refused to give. Peebles' estate is alleged to be insolvent, for which reason his personal representative is not made a party to this suit. Riley left Dallas after the sale of his interest, and his residence is unknown, for which reason he is not made a party to this suit. Appellee never received any remittances from the Special Pictures Company, or any member of such firm, although the prints furnished were shown under lease contracts from said company in various moving picture houses. Only one report was sent to appellee, and that embraced the first month of business, and showed no gross receipts. Appellee alleges this report to be erroneous in respect to the receipts.

Appellant, in his answer, urged a general demurrer and special exception to the peti-

tion, on the theory that no liability on the contract rested on him, and denied under oath that he was at any time a member of the firm known as the Special Pictures Company, or was a partner with Peebles and Riley. He further pleaded, in effect, that he was a friend of Peebles of long standing, and that to help him he loaned the firm the sum of $800; that no note was taken for such loan, but that he was to receive one-third of the profits as consideration for this loan; that he never at any time concerned himself about the management of the affairs of the Special Pictures Company, and never had read, and did not know, the terms of the contract entered into between appellee and Peebles and Riley.

By appropriate allegation in the petition, appellee seeks to recover the amount due him under the lease contract, alleged to have been paid to the Special Pictures Company, for use of prints of "The Pace That Kills" by moving picture companies, and also to recover $5,000 as liquidated damages for breach of a condition in paragraph 6 of the written contract, in that, without the consent or knowledge of appellee, the Special Pictures Company sold one print of the said picture for the sum of $125.

The case was tried to a jury, submitted on special issues, and the findings of the jury on those issues material to this appeal are: (1) Appellant purchased an interest in the business of the Special Pictures Company from Lee Riley and H. T. Peebles on or about the 11th day of April, 1929; (2) the Special Pictures Company parted with the right of possession of the prints in question, or of a part thereof; (3) the exhibitors paid to the Special Pictures Company, for the rentals for showing the film picture, the sum of $860.20.

On this finding and the undisputed evidence, the trial court entered a judgment in favor of appellee against appellant for the sum of $5,242.20; $5,000 of the amount of the judgment clearly represents what the court construed to be liquidated damages, for the breach of that condition of paragraph 6 of the contract which forbade the sale of any of the prints that had been furnished the Special Pictures Company by appellee. We are unable to determine precisely the manner in which the court arrived at the sum of $242.20, the remaining amount of the judgment, except that it could only represent appellee's portion of the gross receipts of the business received by the Special Pictures Company.

Appellant makes three major contentions on this appeal, viz.: (1) That as appellant did not execute the contract forming the basis of this suit, but only contracted with Peebles and Riley for a one-third interest in the profits, as a consideration for the $800 placed by him in the business, he never adopted appellee's contract, and hence a suit cannot be successfully maintained against him because of its breach; (2) that as the terms of the

contract forbade the purchase of an interest therein by any one, without the written consent of appellee, and as the interest appellant secured by his contract with Peebles and Riley was had without the consent or subsequent ratification of appellee, then he could not hold appellant as a party to the contract; and (3) that the clause in the contract which stipulates $5,000 damages for a breach of certain provisions of the contract, is not, in fact, liquidated damages, but is merely a penalty, and the court erred in construing such provision as liquidated damages. These contentions of appellant will be discussed in the order above named.

■■ Is appellant liable to appellee, under the terms of the contract executed by Peebles and Riley? While the contract between appellant and Peebles and Riley bears date of April 11, 1929, the undisputed evidence is that it was not executed until May 13, 1929, nine days after the date of the contract by appellee with Peebles and Riley. At this time, the contract between appellee and Peebles and Riley was entirely executory, no business having been transacted by the Special Pictures Company when appellant purchased his interest therein. The contract that appellant executed, by which he became interested in the business of the Special Pictures Company, recites that he bought an interest in the contract under which the company was doing business, and that he was to receive one-third of the net profits derived from such business. The purport of this recital is to make him a partner in the business. The effect of appellant's testimony is that he never became a partner in the business, but only was to receive an interest in the net profits of the business to be conducted entirely by Peebles and Riley, in order to receive payment of the $800 advanced to them. This evidence, together with the recital in appellant's contract, and other facts as to the conduct of the business, made an issue of fact as to whether appellant was actually a participating partner in the business, and responsible to appellant or any third party in the conduct of the business. This issue of fact was submitted in the form of a special issue to the jury, and resolved against appellant. As such finding of the jury is sustained by evidence, we adopt same, and hold that appellant was a partner in the business of the Special Pictures Company from its inception. Being a partner in the business, which was operated entirely under the terms of the contract between appellee and Peebles and Riley, appellant became responsible equally with Peebles and Riley for the carrying out of the terms of such contract. Cothran v. Marmaduke, 60 Tex. 370; 47 C. J. 839; 20 R. C. L. 985; Page on Cont. vol. 3, § 1700, p. 2932; Hoffman v. Stewart, 184 Ill. App. 66, 68; Bowman & Steadman v. Farmers' State Bank, 168 Minn. 221, 209 N. W. 863; Moore v. Thorpe, 133 Minn. 244, 158 N. W. 235; Kefauver v. Price et al., 136 Ark. 342, 206 S. W. 664. The assignment of error in this respect is overruled.

■ Could appellee maintain the suit against appellant under its contract with Peebles and Riley when he never assented to appellant's purchase of an interest in such contract? Section 10 of the contract declares that the lessees (Peebles and Riley) "will not assign, transfer, mortgage, hypothecate or set over, directly or indirectly, or by operation of law, or in any way part with the rights and lease claimed herein, without the consent of the lessor (appellee) in writing." Such clause in a contract is generally held to have been inserted for the sole benefit of the lessor, and hence he is the only one who can lawfully complain of its violation. One, who is a party with the lessee to the violation of such a contract provision, cannot accept an assignment of an interest in a contract, reap the benefits therefrom, and then rely upon such provision to defeat his liability thereunder. Such is the precise position of appellant in this assignment of error, and it is overruled.

■ Is the sum of $5,000, stipulated to be paid for a breach of any one of six conditions of the contract, liquidated damages, as declared by the contract, or merely a penalty? Such provision in a contract presents for decision one of the most perplexing questions encountered in the construction of written agreements. As stated by 17 C. J. 934, "It seems to be generally conceded, indeed, that each case must be permitted to stand pretty much on its own peculiarities and particular facts, and that no general rule applicable to all contracts are deducible." This authority, however, does lay down what appears to be a general rule to aid in the construction of such a provision in contracts, when in its text it declares that, "Where the parties have agreed on the amount of damages, ascertained by fair calculation and adjustment, and have expressed this agreement in clear and explicit terms, the amount so fixed will be treated as true damages and not as a penalty." This announcement of the rule is sustained by adjudicated cases from many states cited in note under the text. 17 C. J. 934. We will adopt the rule above announced, as a working basis, for the purpose of determining whether such provision in the contract shall be treated as liquidated damages or merely as a penalty.

■■ The provision of the contract under consideration declares that, "It is further understood and agreed between the parties hereto that, by reason of a breach of paragraph 6 of this agreement, it would be impossible to ascertain the exact amount of damages that would accrue to the lessor by reason of such breach," and then declares that the sum named is "hereby stipulated and agreed between the parties as liquidated dam-

ages therefor." The six conditions of the contract, to each of which this stipulation applies, are given in the statement above. The only reason given in the clause of the contract under consideration for naming the sum of $5,000 as liquidated damages is that, "It would be impossible to ascertain the exact amount of damages that would accrue to the lessor by reason of such breach." Such difficulty necessarily exists in the breach of conditions in a great many contracts of this character. The recitation in this clause of the contract precludes the idea that such sum was named after attempting to make "a fair calculation and adjustment" of the damages that might flow from a breach of any of the named conditions. It is manifest on the face of the six conditions that the damages resulting to appellee from a breach of a condition would vary greatly in amount, according to the condition breached. Yet, the stipulation takes no cognizance of this fact, but fixes the same amount as damages for the breach of a condition that could result only in trivial damages, as is fixed for a breach of a condition that could result in much heavier damages. This clearly demonstrates, to our minds, that the sum of $5,000 was named without inquiry, and purely as an arbitrary adjustment of the damages. Under such condition, 17 C. J. 951 declares that: "Where the agreement contains several distinct and independent covenants upon which there may be several breaches, and one sum is stated to be paid upon breach of performance, that sum will be considered a penalty and not liquidated damages. If the parties would stipulate the damages in such case, they should express the sum to be paid upon each distinct breach." The rule of law above announced has been applied in our state. Palestine Ice, Fuel & Gin Co. v. Walter Connally & Co. (Tex. Civ. App.) 148 S. W. 1109 (writ of error denied); Bowden v. Southern Rock Island Plow Co. (Tex. Civ. App.) 206 S. W. 124; 13 Tex. Jur. p. 122, § 45.

We believe the trial court correctly construed the paragraph of the contract under review, as presenting a question for determination by the court and not for the jury. We are, however, further of the opinion that the learned trial judge erred in construing the clause in question of the contract as providing for liquidated damages, rather than as a penalty, and that he should have submitted the issue of damages for the breach in question for the determination of the jury. This error will require a reversal of this case, and it is so ordered.

Reversed and remanded.

### On Motion for Rehearing.

As shown by the original opinion, this cause was reversed and remanded, because, in the opinion of the court, the trial court erroneously construed the contract herein, naming $5,000 as agreed damages for the breach of any one of five conditions of the contract, forming the basis of this suit, to be an agreement for liquidated damages in said amount, and not a contract for indemnity. The case was reversed and remanded for the benefit of appellee so that in another trial he could prove the damages suffered by reason of the alleged breach.

Appellee, in his motion for rehearing, waives the right to recover damages for such breach, and prays the court to modify the former judgment by rendering judgment in favor of appellee in the sum of $242.20, as appellee's share of the gross receipts from a lease of the motion picture film, and to render judgment against him on his claim for $5,000 liquidated damages.

Construing appellee's motion for rehearing to be, in effect, a remittitur of the $5,000 allowed by the trial court as liquidated damages, and as appellant, though denying that he could be held legally liable on the contract, never questioned the correctness of this amount as representing appellee's portion of the amount due on the rent of the film to exhibitors of the picture, the court therefore grants said motion and directs that judgment, reversing and remanding the cause heretofore entered, be set aside, and that judgment of the trial court be reformed so as to deny appellee recovery of the sum of $5,000 as liquidated damages, and affirm the judgment as to the item of $242.20, with interest at the rate of 6 per cent. per annum from the date of the judgment in the district court.

Judgment of the trial court is reformed as above indicated and, as reformed, affirmed; costs of this appeal to be taxed against appellee.

Affirmed.