# T. R. FOLEY COMPANY v. GEORGE A. McKINLEY and Another.[1]

May 5, 1911.

Nos. 17,028—(47).

**Partnership.**

A partnership is a contract between two or more parties to combine their capital, labor, and skill, or some or all of them, in a business in which they are to have a community of interest as principals, for the purpose of joint profits. The sharing of profits is not a conclusive test, and, as between themselves, the question is one of intention.

**Construction of contract — question for the court.**

The construction of a written contract is a matter of law for the court, to be determined upon a consideration of its terms; but when the meaning of a writing, by itself, is affected with uncertainty, the intention of the parties may be ascertained by extrinsic evidence. If the extrinsic facts and the inferences to be drawn therefrom are free from doubt, the construction of the contract is exclusively for the court.

**Parties not partners.**

Rules applied to the contract referred to in the opinion, and *held*, that its construction was a matter of law, and that it did not make the parties thereto partners.

Action in the district court for Crow Wing county to recover $1,464.75, balance alleged to be due for goods sold and delivered. The facts are stated in the opinion. The case was tried before McClenahan, J., who, at the close of the trial, denied the motions of plaintiff and defendant Hoerr for a directed verdict. The jury returned a verdict against defendant McKinley for the amount demanded. From an order denying plaintiff's motion for judgment against defendant Hoerr notwithstanding the verdict, or for a new trial, he appealed. Affirmed.

*A. D. Polk,* for appellant.

*Jay Henry Long,* for respondent Hoerr.

[1]Reported in 131 N. W. 316.

[Note]   Effect of agreement to share profits to create a partnership, see note in 18 L.R.A. (N.S.) 963.

STArt, C. J.

Action for goods sold, originating in the district court of the county of Crow Wing. The complaint alleged that the defendants were partners doing business under the firm name of George A. McKinley, and that the plaintiffs, from March 30 to August 9, 1907, at their request, sold and delivered to them goods of the reasonable value of $1,714.75, no part of which has been paid, except the sum of $250. The answer of the defendant Hoerr denied the alleged partnership, also the sale of any merchandise to the defendants, and alleged that the goods in question were sold to the defendant McKinley individually. The answer of the defendant McKinley denied the partnership and alleged that the goods were sold to him individually, and, further, that for a valuable consideration the time for the payment therefor had been extended. The case was tried to a jury. At the close of the evidence the plaintiff and Hoerr each moved for a directed verdict. Both motions were denied. The jury returned a verdict for the plaintiff against the defendant McKinley only. The plaintiff appealed from an order denying its blended motion for judgment notwithstanding the verdict against the defendant Hoerr, or for a new trial.

The sole question for our decision is whether or not, upon the whole evidence, the trial judge should have ruled that the defendants were partners as a matter of law.

The evidence shows that prior to March 26, 1907, the defendant McKinley was engaged in the business of getting out cedar poles, posts, ties, and pulp wood on the upper Mississippi river and its tributaries, and driving them in the river to Brainerd, and selling them. He then had a contract with the Itasca Cedar & Tie Company for the sale and delivery to it of a large quantity of poles and pulp wood. On March 28, 1907, being in need of money for his business, he entered into a written contract with the defendant Hoerr, designated in the record as "Exhibit B," in which he was named as party of the second part. Hoerr was designated therein as the party of the first part. Exhibit B, so far as here material, was, in effect, in these words:

The first party hereby agrees to advance to the party of the sec-

ond part such moneys as are needed, up to the sum of $20,000, for the purpose of carrying out the cedar and lumber business now in operation and partly under contract with the Itasca Cedar & Tie Company, and also will manage the finances of said business; and in consideration thereof the party of the second part agrees that the advances of the party of the first part shall be repaid out of the first proceeds of the business, after expenses and contracts are taken care of, and in further consideration party of the first part shall be paid one-half of the net profits of the business. Party of the second part shall devote his time to the general management of the business. This agreement covers all the business connected with the cut of the logging season for the years 1906 and 1907. Party of the second part shall not include in expenses any pay for stumpage owned by himself and cut during the season. It is hereby understood that the stumpage to be free under this contract is that cut by Tiessen in Savan district and by William McKinley near Swan river, and the amount of money which party of the second part has invested in said business is $3,000, exclusive of funds borrowed in bank, which is $2,800. Advances by either party to draw six per cent. interest.

On the same day McKinley assigned, in writing, his contract with the Tie Company to Hoerr, and instructed, in writing, the Tie Company to make all payments due or to become due on its contract to Hoerr, who was authorized to collect and receipt for such payments.

It is here conceded that the whole agreement between McKinley and Hoerr is embraced in these written documents, and the question, in its last analysis, is whether the contracts, construed in connection with the evidence, given on the trial, of extrinsic facts affecting their construction do or do not establish as a matter of law, the alleged partnership. The law applicable to this question is well settled in this state. It is not practicable to frame an exact and comprehensive definition of a partnership, for there can be no rigid test applicable to all cases. It is sufficient for the purposes of this case to say that a partnership is a contract between two or more parties to combine their capital, labor, and skill, or some or all of them, in a business in which they are to have a community of interest, as principals, for the purpose of joint profits. The sharing of profits is not a con-

114 M.—18.

clusive test of partnership and, as between themselves, the question of partnership is one of intention on their part. McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760; McAlpine v. Millen, 104 Minn. 289, 116 N. W. 583.

The construction of a written contract is ordinarily a matter of law for the court, to be determined solely upon a consideration of its. terms; but when the meaning of a writing, by itself, is affected with. uncertainty, the intention of the parties may be ascertained by extrinsic evidence, parol or otherwise, and such intention, so ascertained, will be taken to be the meaning expressed in their written contract, if it be one which may be distinctly derived from a fair interpretation of the words used. In such a case, if the extrinsic facts and the inferences to be drawn therefrom are free from dispute, the construction of the contract is exclusively a question for the court; but otherwise the question of the intention of the parties to the contract must be submitted to the jury with proper instructions. Dodge v. Rogers, 9 Minn. 209 (223); Kelly v. Bronson, 26 Minn. 359, 4 N. W. 607; Hooper v. Webb, 27 Minn. 485, 8 N. W. 589; Board of Trustees v. Brown, 66 Minn. 179, 68 N. W. 837; State v. Fellows, 98 Minn. 179, 107 N. W. 542, 108 N. W. 825.

Evidence of extrinsic facts showing the circumstances under which the contract was made was received on the trial without objection. The following extrinsic facts were undisputed and established: McKinley, being in need of financial assistance to enable him to complete his contract with the Tie Company, applied to Hoerr, a friend and capitalist, and disclosed to him the condition of the business, including the amount of material on hand, and the amount of money received from the Tie Company and expended. He estimated that the profits from the enterprise would be some $35,000, and both parties confidently expected that there would be a profit. After Hoerr had made some general investigation, the parties met at Aitkin, where they entered into the contract, Exhibit B. No inventory was taken. Nothing was said by the parties in their negotiations, or at any time, about a partnership, or loaning money, or terms of payment, or the giving of notes or securities, other than expressed in the written instruments, except that Hoerr said he wanted an assign-

ment of the contract with the Tie Company for security. No notes were given by McKinley to Hoerr, for the reason that the advances were to be made only as the money was needed, and the time of repayment was uncertain. After Exhibit B was executed the business was conducted as before by McKinley in his own name, except that the bank accounts were in part kept in Hoerr's name, who managed the finances. He advanced, as it was needed, the $20,000. This amount proved to be insufficient for the completion of the contract with the Tie Company, and he continued to make advances without any further express contract. He advanced in all some $50,000. There was no evidence which would justify a finding that Hoerr held himself out as a partner.

We are of the opinion that the construction of Exhibit B, in connection with the undisputed evidence as to the extrinsic facts, was a matter of law, and that the question whether the parties thereto were partners was one to be decided exclusively by the court.

Counsel for plaintiff urges that the stipulation in the contract that Hoerr was to be paid one-half of the net profits, that he was to advance $20,000, that McKinley had invested $3,000, and that advances by either party should draw interest at six per cent., considered in connection with the other terms of the contract, constitute a partnership contract in every essential respect. In other words, the claim of counsel is, to quote from his brief, that "this contract is full, plain, definite, unambiguous, and constitutes a partnership contract. * * * If this contract had been ambiguous, or if it did not state all the agreement of the parties, then other testimony would be proper. Probably with that end in view, testimony was received showing all the surrounding circumstances and the contemporaneous and subsequent acts of the parties. This testimony neither extends the partnership contract, nor in any way changes its express terms."

If it be conceded that the contract is complete and unambiguous on its face, it cannot be construed as creating a partnership, if effect be given to all the provisions. Hoerr, by the contract, agrees to advance to McKinley, not to any partnership or enterprise, the sum of $20,000 for the purpose of carrying out the cedar and lum-

ber business now in operation and partly under contract with the Tie Company (and McKinley), and, further, to manage the finances of the business. In consideration of these promises for advances and services, McKinley agrees that Hoerr shall be repaid for the advances out of the first proceeds from the business, after expenses and contracts are taken care of, and one-half of the net profits. The contract then provides how the stipulated compensation, one-half of the net profits, shall be ascertained, by stating what matters shall be excluded, and also the amount McKinley has invested in the business, and the rate of interest the advances shall draw. We are of the opinion that this contract does not, on its face, constitute the parties thereto partners. Richardson v. Hughitt, 76 N. Y. 55, 32 Am. Rep. 267. While it is in some respects ambiguous, yet, construing all of the terms in connection with the extrinsic facts, the intention of the parties is reasonably clear, and we hold that it is not a partnership contract.

It follows that the defendant Hoerr was entitled to an instructed verdict in his favor, but the submission of the case to the jury was harmless error, in view of the fact that the verdict was in his favor.

Order affirmed.