235 F.2d 425
 PACIFIC NATIONAL FIRE INSURANCE COMPANY, a corporation, Appellant,
v.
J. J. MICKELSON, Trustee in Bankruptcy of the Estate of Wirt
Cook, an individual doing business as St. Paul
Sporting Goods Company, and United
States of America, Appellees.
 No. 15523.
 United States Court of Appeals Eighth Circuit.
 July 10, 1956.
Rehearing Denied Aug. 10, 1956.
 
 Samuel Levin, St. Louis, Mo. (LeRoy Bowen, Minneapolis, Minn., was with him on the brief), for appellant.
 W. M. Kronebusch, Minneapolis, Minn., for appellee J. J. Mickelson, trustee.
 Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 J. J. Mickelson (plaintiff-appellee), Trustee in Bankruptcy of the Estate of Wirt Cook, an individual doing business as St. Paul Sporting Goods Company, brought this suit against Pacific National Fire Insurance Company, a corporation, (defendant-appellant) to recover on a policy of fire insurance issued by the appellant to the St. Paul Sporting Goods Company. A second suit against the Homeland Insurance Company on its policy of insurance awaits, by stipulation, the outcome of this appeal. The United States intervened in the suits to protect its lien for unpaid income taxes and penalties due from Wirt Cook. This suit was tried to the court without a jury and resulted in judgment against the appellant. The principal question at the time of trial in District Court was whether Wirt Cook was responsible for causing the fires which resulted in the damage to the insured property. The sole issue then was one of fact. There was no dispute as to the liability of the appellant pursuant to the coverage contracted for, provided the fire was not intentionally set by, for or on behalf of the insured, Wirt Cook.
 
 
 2
 The fire out of which this litigation arose occurred around midnight on Wednesday, October 8, 1952. The insured, Wirt Cook, left the premises where he conducted his business at about 4:00 p.m. and proceeded to his home on Mississippi River Road, where he had dinner with his family. He then drove to the Dyckman Hotel in Minneapolis for a 7:00 p.m. appointment with a sporting goods salesman. Following this meeting, he left alone about 9:30 p.m. by automobile for an appointment with a school official at White Bear, Minnesota, in connection with a possible sale of his merchandise. He arrived at White Bear about 10:00 p.m. He stayed until about 10:30 or 10:45. He then left for his home, arriving there about 11:30 p.m. He was there informed by his wife that she had just had a telephone call advising that the store was on fire. While waiting for his wife to dress for the purpose of accompanying him, Cook received a confirming telephone call from the St. Paul Police Department, that call being between 11:30 p.m. and midnight.
 
 
 3
 Investigations by the St. Paul Fire and Police Departments were made. The investigators concluded that two separate fires had been set in the store shortly before midnight on October 8, 1952. They also observed evidence of a third fire in the basement which had occurred at some prior date. The evidence indicated that the store had only one door and there were only two keys to the door. A store clerk, Hansen, had one key and Wirt Cook had the other. Hansen and his wife both testified that about 6:00 o'clock in the evening of October 8, 1952, he locked the door. His wife was present. She left some parcels in the store. They went to a nearby restaurant and had dinner, coming back about 7:00 o'clock p.m. They unlocked the door, got the parcels and then relocked the door, after which Hansen tried it to be certain that it was locked. Hansen and his wife both accounted for their whereabouts after they left the store until they were apprised of the fire. No motive for the burning of the store can be attributed to Hansen.
 
 
 4
 When the St. Paul Fire Department responded to the fire call, they found the door to the store unlocked. There was no evidence of anyone having broken into the store. The evidence indicated that Wirt Cook was in financial difficulty at the time of the fire. His business showed a heavy loss during the year 1952 up to the time of the fire. He was being pressed for payment by the government, by the people from whom he originally purchased the business, and by merchandise creditors. Judgments had been obtained against him. Life insurance on himself and his wife was cancelled for non-payment of premiums, notices of which Cook had received shortly before the fire. Other judgments were threatened. His bank accounts were practically depleted. A large number of his checks had come back for insufficient funds. Threat had been made to cut off his telephone service.
 
 
 5
 Cook's financial history sometime prior to buying the St. Paul Sporting Goods Company was gone into at some length. It appeared that prior to December, 1949, Cook had been employed as a branch sales manager of the Ford Motor Company in St. Paul. At that time automobiles were hard to obtain. He distributed Ford cars to dealers and others and illegally received from the dealers $100.00 per car in what he termed 'under-the-counter payments'. As a result of these operations, Cook accumulated approximately $40,000.00. Sometime later 'the Government finally caught up * * *' to Cook and at the time of the fire he was still owing substantial amounts on income tax liability.
 
 
 6
 The trial court found specifically that the fire '* * * was of undetermined origin and not intentionally set by, for or on behalf of the insured named in said policy' and entered judgment for the appellee.
 
 
 7
 Appellant complains in this court that 'the clear and uncontroverted evidence shows incendiary fires, pressing debts, judgments and motive to collect insurance', that 'the trial court's opinion, findings and judgment are against the manifest weight of the evidence and erroneous', and that this court has authority to reverse the judgment. In other words, the appellant is asking this court to set aside the trial court's findings of fact and hold that on the evidence the fire was incendiary in nature and was set by the insured, Wirt Cook, and to order judgment for the appellant.
 
 
 8
 Appellant argues that in Minnesota, the law of which state is controlling herein, in an action on a policy of insurance to recover for fire loss it is only necessary to prove a defense by a preponderance of the evidence, citing Thoreson v. Northwestern Nat. Ins. Co., 29 Minn. 107, 12 N.W. 154. Appellant cites State v. Lytle, 214 Minn. 171, 7 N.W.2d 305, as being directly in point and decisive of this case. That case merely held that the circumstantial evidence introduced by the state was sufficient to justify the jury in finding that the fire which the defendant was accused of setting was an incendiary fire and that defendant set it. In that case, the Supreme Court of Minnesota was passing upon the sufficiency of the evidence to justify a verdict of guilty by the jury. That is not our situation in the instant case and that case is not authority for appellant's contention.
 
 
 9
 The Lytle case and the other minnesota cases relied upon by the appellant are authority for the proposition that circumstantial evidence, including evidence of motive and opportunity, such as we have in the instant case, are sufficient to justify sustaining, on appeal, the ultimate conclusion of the fact-finding agency. They are not authority for the proposition that circumstantial evidence, such as we have here, will justify this court in reversing the conclusions of a jury or the trial judge who set in place thereof.
 
 
 10
 Only one case cited by the appellant lends some support to its contention. In Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68, the Supreme Court of Louisiana reversed the district court in a somewhat similar situation. A careful reading of that opinion, however, indicates that the facts supporting the contention that the insured set the fire or had it set for him were a great deal stronger than they are in the instant case. The evidence connecting the insured with the setting of the fire in that case was overwhelming. In that case, strange as it may seem, a sheriff and his deputy, in investigating another fire, had taken photographs of the interior of plaintiff's house shortly before the fire, which photographs disclosed a condition which would justify only the conclusion that the fire was incendiary in nature. The evidence in that case justified the appellate court's reversal of a clearly erroneous finding. We do not consider the situation herein as being comparable. There is no direct evidence which hooks up Wirt Cook with the setting of the fire. Possible motive and possible opportunity only have been shown. Wirt Cook was not seen anywhere near the pace of the fire at or near the time thereof. His movements are accounted for. We do not consider the evidence against him nearly so strong as that introduced in the Sumrall case and therefore do not view it as comparable.
 
 
 11
 There is little question in our minds but that from the evidence disclosed by the record the trial court could have found that this was an incendiary fire and that it was set by or on behalf of the insured, Wirt Cook. The point is, however, that the testimony was entirely circumstantial and the burden and responsibility of making the ultimate conclusion on conflicting testimony or testimony which is merely circumstantial rests with the jury or, where a jury has been waived, with the court itself.
 
 
 12
 With reference to the findings of a trial court, we said, in Imperial Assur. Co. v. Joseph Supornick & Son, 8 Cir., 1950, 184 F.2d 930, 933:
 
 
 13
 'Findings of the trial court are presumptively correct and will not be set aside unless clearly erroneous, due regard being given to the opportunity of the trial court to judge of the credibility of the witness. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.'
 
 
 14
 See also Pendergrass v. N.Y. Life Ins. Co., 8 Cir., 1950, 181 F.2d 136, 138, post.
 
 
 15
 The appellant attacks the finding of the trial court to the effect that 'the fire was of undetermined origin'. Appellant complains:
 
 
 16
 '* * * that the Trial Judge erroneously found that the fire in question 'was of undetermined origin and not intentionally set by, for or on behalf of the insured named in said policy'. This conclusion of the Trial Judge is we submit contrary to the manifest weight of the evidence. The evidence of incendiarism is undisputed.' (Emphasis supplied.)
 
 
 17
 Even if it was error to fail to find that the fire was incendiary in nature, the error is without prejudice. The important fact question was whether or not the fire was intentionally set by, for or on behalf of Wirt Cook. The trial court found specifically that the fire was '* * * not intentionally set by, for or on behalf of the insured named in said policy.' As already pointed out, there was no direct evidence to the effect that Wirt Cook set the fire. The evidence was only circumstantial. The burden of proving incendiarism on the part of Wirt Cook rested on the appellant. The trial court held that that burden had not been met. See Barich v. Pa. Fire Ins. Co., 1934, 191 Minn. 628, 255 N.W. 80.
 
 
 18
 The appellant herein cites United States v. United States Gypsum Co., 1947, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, and quotes as follows:
 
 
 19
 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'
 
 
 20
 The foregoing is inapplicable here because we are not left with the 'definite and firm conviction that a mistake has been committed.'
 
 
 21
 This court commented on the statement in the Gypsum case in Pendergrass v. N.Y. Life Ins. Co., 8 Cir., 1950, 181 F.2d 136, 138, supra, as follows:
 
 
 22
 'The opinion in that case shows that the Supreme Court regarded the findings which it held to be erroneous as contrary to the clear weight of the evidence. The statement above quoted, when read in connection with what was later said by the Supreme Court on the same subject in Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 336 U.S. 271, 275-276, 69 S.Ct. 536 (93 L.Ed. 672), furnishes no warrant for the belief that we can retry doubtful issues of fact upon a cold record, and substitute our judgment for that of the trial court with respect to such issues, or that a district court, in nonjury cases, is to act as a sort of special master for this Court, to report testimony, to make advisory findings, and to enter an advisory judgment.
 
 
 23
 'There is no logical reason for placing the findings of fact of a trial judge upon a substantially lower level of conclusiveness than the fact findings of a jury of laymen, or those of an administrative agency, which may be set aside only if unsupported by substantial evidence. The findings of fact of a trial court should be accepted by this Court as being correct unless it can be clearly demonstrated that they are without adequate evidentiary support or were induced by an erroneous view of the law. The entire responsibility for deciding doubtful fact questions in a nonjury case should be, and we think it is, that of the district court.'
 
 
 24
 Here the trial judge saw and heard the witnesses and was in a far better position to determine close questions of fact than is an appellate court on a cold record. It is argued by appellant that Wirt Cook had a motive in setting the fire, that is, financial profit, yet appellee points out that the amount of Wirt Cook's indebtedness eliminated any possibility of his recovering anything for himself. Appellee also points out that the record is devoid of any evidence directly connecting Wirt Cook with the setting of the fire. These things are matters which peculiarly present themselves for determination by the finder of the facts and, where the finder of such facts does not abuse the discretion which the law places on him, an appellate court has no right to substitute its judgment therefor.
 
 
 25
 Affirmed.