**H. C. NELSON, Sidney A. Nelson, and H. C. Nelson Investment Company, Appellants,**

v.

**SEABOARD SURETY COMPANY, a corporation, et al., Appellees.**

**No. 16040.**

United States Court of Appeals Eighth Circuit.

Sept. 3, 1959.

---

12. Rosenfeld v. Zimmer, 1953, 116 Cal.App.2d 719, 254 P.2d 137, 139.

Frank J. Hammond, St. Paul, Minn. (Briggs, Gilbert, Morton, Kyle & Macartney, St. Paul, Minn., were with him on the brief), for appellants.

Paul C. Thomas and Frederick A. Collatz, St. Paul, Minn. (Robert R. Hume and Thomas, Bradford, King & Collatz, St. Paul, Minn., were on the brief), for appellee Seaboard Surety Co.

Robert O. Sullivan, Philip Stringer, Arthur J. Donnelly, and R. Paul Sharood, St. Paul, Minn., on brief for appellee Borchert-Ingersoll, Inc.

Frank E. Clinite and Charles F. Kelly, Minneapolis, Minn. on brief for appellee Armco Drainage & Metal Products, Inc.

Nunan, Quealy, Colwell & Greffenius, Minneapolis, Minn., on brief for appellee Rocket Transfer, Inc.

Charles J. Foley, Minneapolis, Minn., on brief for appellee J. V. Gleason.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by H. C. Nelson Investment Company (Investment), H. C. Nelson, and Sidney Nelson (all of whom will sometimes be referred to jointly hereinafter as Nelsons), from final judgment rendered against them in an action commenced by Seaboard Surety Company, a corporation (Seaboard). The case was tried to the court without a jury. The court awarded judgment to Seaboard against the Nelsons and others for $164,920.79, awarded damages in favor of certain other claimants, and denied the Nelsons' counterclaims for rentals, conversion, and reformation. Memorandum opinion is reported in Seaboard Surety Company v. H & R Construction Corporation, D.C., 153 F.Supp. 641. The court also filed detailed findings of fact and conclusions of law.

Jurisdiction is based upon diversity of citizenship and the jurisdictional amount.

Seaboard is engaged in the business of writing surety bonds as a compensated surety. H & R Construction Company (H & R) was a building contractor. This litigation arises as a result of perform-

ance bonds issued by Seaboard for H & R in connection with eight of its construction contracts. These contracts, listed in the order in which they were signed, are referred to in the evidence as: (1) Sauers, (2) Woodrich, (3) Waseca, (4) Waseca, (5) Normandale, (6) Excelsior, (7) Shakopee, (8) Lummus. The first contract is dated March 19, 1952, and the last, April 1, 1954. The first seven bonds were conditioned upon the completion of the work and payment of all claims for labor and material. The last bond, Lummus, required the surety to guarantee the completion of the job free of liens. All contract jobs were physically completed. Seaboard was not called upon to make any payments on its bonds as to the first five contracts. H & R failed to pay bills in the alleged amount of $4,471.80 on Excelsior, $65,014.56 on Shakopee, and $28,127.57 on Lummus.

Seaboard by this action, among other things:

"(a) Sought to compel all interested creditors of H & R to prove their respective claims arising out of such issuance of surety bonds by Seaboard and H & R.

"(b) Asked judgment against H & R as principal, for the full amount of Seaboard's liability.

"(c) Claimed that H. C. Nelson and Sidney Nelson (hereinafter 'the Nelsons') were partners doing business as H. C. Nelson Investment Co. (hereinafter 'Investment') and that Investment was a partner or joint adventurer of H & R and a co-principal upon said bonds. Seaboard claims judgment against Investment for the entire amount adjudged to be payable by H & R to Seaboard.

"(d) Claimed damages against Investment for its alleged breach of certain agreements to furnish funds and equipment for H & R and claimed that such failure resulted in increased liability to Seaboard under its several bonds.

"(e) Alleged that Investment sold and mortgaged various items of equipment belonging to H & R in derogation of Seaboard's rights in such equipment, and that Investment has diverted monies belonging to H & R."

H & R defaulted on Seaboard's claims and has not appealed from the judgment entered against it. There is no question but that Seaboard was required to make substantial payments on the last three bonds it issued because of H & R's defaults upon its contracts.

The Nelsons admitted that Investment is a partnership composed of H. C. Nelson and his wife, but denied Investment or any of its members had any partnership relations with H & R, and further denied that Sidney Nelson was a partner in Investment. The Nelsons also asserted an affirmative defense to Seaboard's action, stating that Seaboard, after it had knowledge of the partnership, had elected to deal with H & R alone, and thereby waived any rights it might have against the Nelsons. Investment counterclaimed against Seaboard for rentals of equipment furnished H & R on the bonded jobs and for conversion of various items of machinery and equipment. A number of individual claimants asserted claims for labor and material furnished on the bonded jobs. H & R filed cross-claims against the Nelsons for various sums alleged to be due it.

The facts and issues are complicated and voluminous. The trial lasted 50 days. The printed record consists of 2705 pages. In addition there are numerous exhibits not contained in the record. All issues raised and the facts pertinent thereto cannot be fully discussed without unduly extending this opinion. We shall attempt to restrict our statement of the issues and facts to those essential for the disposition of this appeal.

The basic issues will be discussed under the following headings in the order listed:

1. Partnership issue.
2. Election issue.
3. Judgment.
4. Other issues.

Before passing to the specific issues just stated, we shall briefly discuss general principles of law applicable to the consideration of all issues.

The trial court held that Minnesota law governs. No one has disputed this holding. It appears that the contracts involved were made in Minnesota and were to be performed in that State. We shall therefore proceed upon the basis that Minnesota law applies.

■ The findings of fact of a trial judge sitting without a jury should not be set aside unless it is clearly demonstrated that they are without adequate evidentiary support in the record or were induced by an erroneous view of the law. Pacific National Fire Ins. Co. v. Mickelson, 8 Cir., 235 F.2d 425, 428; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 138.

1. Partnership issue.

The court held that a partnership or joint venture had been established between H & R and the Nelsons as to the construction contracts giving rise to this controversy. The court in its opinion states that the extensive trial was directed largely to the partnership issue. The court sets out the applicable Minnesota law and summarizes the facts supporting its conclusion.

Seaboard does not claim that the Nelsons held themselves out to be partners. Moreover, there is no substantial evidence to support a partnership by estoppel. Consequently, the real issue is whether the Nelsons and H & R were partners as between themselves.

In Moore v. Thorpe, 133 Minn. 244, 158 N.W. 235, 238, the court states:

"If Kellett Company and the individual defendants were partners as between themselves, they were partners as to third persons. On the other hand, if they were not partners as between themselves, they are not liable as such to plaintiff, as there is no estoppel or holding out in the case. * * *"

In Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 536, 90 L.Ed. 670, the question was whether an alleged partnership was valid for income tax purposes. The validity of the partnership was challenged by the Commissioner. The Supreme Court states that when the question of the existence of a partnership is raised by an outsider, "the question arises · whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect. is a question of fact, to be determined: from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.'· * * * *" See 68 C.J.S. Partnership §: 24, p. 443.

■■ There is no arbitrary test for determining the existence of a partnership. Each case must be determined: upon its own facts. The trial court's findings must be sustained if the evidence· as a whole shows that the parties had¹ entered into a partnership relation. Wormsbecker v. Donovan Construction· Co., 251 Minn. 277, 87 N.W.2d 660, 664;. Cyrus v. Cyrus, 242 Minn. 180, 64 N.W. 2d 538, 541, 45 A.L.R.2d 1002; Blumberg· v. Palm, 238 Minn. 249, 56 N.W.2d 412, 414. In the Blumberg case the court. states (56 N.W.2d at pages 414–415):

"* * * The cases are rare, however, in which this court has taken upon itself the determination of whether the evidence was within the definitions once a trier of fact in the trial court had made the determination. Most of the cases defining and discussing the elements of a partnership are cases which uphold the finding of a jury or a trial court sitting without a jury. This court has often said that there is no arbitrary test for the existence of a partnership and that, unless the evidence is conclusive, it is a question of fact for the trier of fact. * *"

In Hansen v. Adent, 238 Minn. 540, 57 N.W.2d 681, 684, it is said:

"M.S.A. § 323.02, subd. 8, defines a partnership as 'an association of two

or more persons to carry on as co-owners a business for profit.' It is essential to the existence of a partnership that there be a joint contribution to the enterprise and something in the nature of a community of interest. Hammell v. Feigh, 143 Minn. 115, 173 N.W. 570. When parties contribute their experience, their capital, and their energies to a common enterprise, in which they are to share the profits, a partnership may result, notwithstanding an expressed intention not to create such a relationship. Whether or not a partnership exists is a fact question. * * * "

■ The trial court in its opinion found that Rohr, the owner of H & R, and the Nelsons agreed that they did not intend to create a partnership relation between themselves. We agree with the trial court that the evidence does not bar the existence of a partnership relation if a partnership legally results from what was said and done by the parties. Intent is an essential element of the partnership relation. It is the intent to do the things that constitute a partnership which determines whether the partnership relation exists. It is the substance and not the form of the arrangement which determines the legal relationship of the contracting parties to each other. McDonald Bros. v. Campbell & Bergeson, 96 Minn. 87, 104 N.W. 760, 761; Randall Co. v. Briggs, 189 Minn. 175, 248 N.W. 752, 754; Hansen v. Adent, supra; 68 C.J.S. Partnership § 10, p. 416. In the McDonald Bros. case, supra, the Minnesota Supreme Court states (at page 761 of 104 N.W.):

"* * * where a partnership is the legal result of the agreement actually made, parties are partners, even though they have stipulated that they are not to be partners. 'The intention is ascertained from the whole contract, from the actual result it creates, and not from the fact that the parties denominated it a partnership or may declare a partnership is not intended.' * * * "

■ The sharing of profits is one factor to be considered in determining whether a partnership relation is established. In the McDonald Bros. case, supra, the court states that in some of the early cases the sharing of profits was said to be a conclusive test of the existence of a partnership, but that the sharing of profits alone is no longer regarded as conclusive proof of the existence of a partnership.

Section 323.06, Minnesota Statutes Annotated, provides in part:

"In determining whether a partnership exists, these rules shall apply:

*     *     *     *     *     *

"(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business * * * ."

The court in Blumberg v. Palm, supra, says with reference to the quoted statute (at page 415 of 56 N.W.2d):

"* * * a prima facie case simply means one that prevails in the absence of evidence invalidating it. If there is such evidence, the issue is for the trier of fact. * * "

Hanson v. Nannestad, 212 Minn. 325, 3 N.W.2d 498, holds that a showing of share in the profits makes out a prima facie case, and that the trial court erred in dismissing the complaint at the close of plaintiff's evidence on the ground that there was no evidence to support a partnership finding.

■ The Nelsons, as a basis for reversal, rely largely on T. E. Foley Co. v. McKinley, 114 Minn. 271, 131 N.W. 316. The case lends some support to the Nelsons' contention, but is factually distinguishable from the present case. Further, in the Foley case, the fact finder, the jury, actually found that no partnership existed. It would therefore seem that the court's statement that there was no partnership as a matter of law was dicta. The later Minnesota cases, heretofore cited, show that the Minnesota court has almost invariably held in cases where there was a showing of participa-

tion in profits that the issue of the existence of a partnership is a fact question and not a question of law.

We are satisfied that the court properly interpreted the Minnesota law.

■ We now look to the record to determine if there is substantial evidence to support the court's finding that a partnership existed.

On March 17, 1952, in connection with the Sauers contract Investment and H & R signed an agreement by which Investment agreed to guarantee bills on the Sauers job up to $10,000 and to lease the necessary equipment. This agreement, among other things, provides:

"It is further agreed and understood by and between the parties hereto, that any profits, and, or losses, after the payment of all outstanding obligations shall be distributed in the following portion or shares:

"To the H. C. Nelson Investment Co. an undivided two-thirds thereof, and to the H. & R. Construction Corporation an undivided one-third thereof. It being understood that the H. C. Nelson Investment Co. equipment rental, and any advancement made by H. C. Nelson Investment Co. shall be an obligation payable to the H. C. Nelson Co. before the determination of any profits, and/or losses."

A similar agreement was made on July 7, 1952, covering the Woodrich and Waseca jobs, except that this contract provided that H & R and Investment were to share profits and losses equally. There are apparently no written agreements covering sharing of profits and losses on the other construction projects, but the evidence as a whole supports the trial court's finding to the effect that the arrangement for sharing profits and losses remained in effect as to all subsequent contracts. Such agreement, as heretofore pointed out, contemplated the sharing of losses as well as the sharing of profits. In addition, the court in its opinion, at page 645, lists numerous other findings in support of its conclusion that

joint proprietorship and mutuality of control exist. We will not attempt to summarize the evidence supporting such findings. We have, however, examined the record and are satisfied that there is substantial evidence to support the court's determination that a partnership relation existed between H & R and Investment as to all of the eight construction contracts.

The Nelsons have admitted that Investment is a partnership composed of H. C. Nelson and his wife. Mrs. Nelson is not a party to this action, and her rights and liabilities have neither been discussed nor adjudicated. The determination that H. C. Nelson and Investment are partners of H & R in the projects here involved must be affirmed.

■ The situation with reference to Sidney Nelson is entirely different. There is no evidence to establish that Sidney Nelson was a partner in Investment. The trial court did not so find. On the contrary, the trial court has found that H. C. Nelson was the real owner of Investment. The evidence shows that the agreements which it is claimed established the partnership relation were between Investment and H & R. Since it is clear that Sidney Nelson was not a partner in Investment, the partnership agreements between Investment and H & R could not make him a member of the partnership. Moreover, there is no substantial evidence to support a finding that Sidney Nelson individually ever entered into a partnership relationship with H & R. There is no showing that he was to participate in the profits or losses arising from any of the contracts, or that he made any contribution of capital or contributed any services except in the capacity of an employee. Sidney Nelson is a son of H. C. Nelson. At the time of the commencement of the Nelsons-H & R relationship, Sidney was attending the University of Minnesota. Prior to the time of his graduation, in June 1953, he worked part time for H & R and Investment. After graduation he put in full time. He kept H & R's books, paid its bills after they had been

approved by Rohr, did some typewriting, and performed other duties. He rendered similar services for his father. During much of the time here involved Sidney was on H & R's payroll. He also received wages from his father. Mr. Nelson relied to a considerable extent upon Sidney for information and advice, and at times, for his convenience, placed title to various items of machinery in Sidney's name. As to such transactions it is undisputed that the real ownership of said property was at all times in H. C. Nelson. Seaboard argues that Sidney Nelson would likely inherit from his father and thus receive the benefit of his father's partnership accumulations. The trial court refers to Sidney Nelson as the "heir apparent." The possibility that Sidney Nelson might at some future time acquire by gift or inheritance from his father some of the fruits of the contracts here involved affords no basis for determining that he has a present interest in the partnership property or profits.

We find no substantial evidence to support the finding that Sidney Nelson was a partner in any of the relevant transactions. Any judgment entered against Sidney Nelson upon the basis that he is a partner must be reversed.

2. Election issue.

Seaboard as surety signed the performance bond on each of the eight contracts heretofore listed. H & R was the principal on each of said contracts and was the principal named in each of the bonds. Before obligating itself upon the bonds, Seaboard required a written application, which application contained broad provisions indemnifying the surety against loss, such as, an assignment to the surety of all materials, supplies, and equipment to be used on the job, and the transfer to the surety upon default of all payments due on the contract. The application form contains the following language:

"If co-partnership, firm name must be signed with name of member acting on its behalf, and each member must sign individually as well."

Seaboard, before executing each bond, insisted upon and obtained an agreement signed by Investment and H & R to the effect that Investment would make available an agreed sum of money and the necessary equipment, no rental to be paid upon the equipment until such time as it was no longer needed on the job. The money to be furnished by Investment to H & R on each job was $10,000, except the amount on Woodrich was $15,000. At least some of the agreements just referred to were prepared by Seaboard, and Seaboard before signing the bond obtained a signed copy of the agreement. Seaboard had initially requested that Investment sign the bond applications as indemnitor, which request was refused. The Nelsons in their answer alleged:

"* * * at all material times the plaintiff knew, or by the exercise of proper and reasonable inquiry could have known, of the existence of the alleged relationship between H & R Construction Corporation on the one hand and these defendants on the other hand and knowing of such relationship elected to deal with H & R Construction Corporation alone; that as a result of such knowledge and election plaintiff is precluded and estopped from recovery against these defendants."

The court held against the Nelsons on this defense. In its opinion the court states (at page 646 of 153 F.Supp.):

"It is true that when a contracting party knows of the existence of a partnership and chooses to deal exclusively with one of the partners and to look to him alone, he may not thereafter have recourse to the other partners for performance of the contract because he will be held to the election he made at the time of contracting. * * *"

This appears to be a proper statement of the law. Moore v. Thorpe, supra; Southern Surety Co. v. Plott, 4 Cir., 28 F.2d 698.

In order to prevail upon the election defense the Nelsons must prove the

existence of the essential elements of such defense, which are, Seaboard's knowledge of the fact that the partnership existed and its election with such knowledge to rely upon H & R alone. Seaboard contends that actual knowledge of the existence of the partnership is required. It relies upon Tyler v. Waddingham, 58 Conn. 375, 20 A. 335, 8 L.R.A. 657, which so holds, and contends that the Minnesota court in Moore v. Thorpe, supra, adopted such a rule by citing the Tyler case. We do not so read Moore v. Thorpe. The court there states (at page 238 of 158 N.W.):

> "* * * Unless plaintiff knew that the individual defendants were principals in the enterprise, and intended notwithstanding to give exclusive credit to Kellett Company, he may recover of the after-disclosed partner, on the same principle as applies in the case of an undisclosed principal. * * *"

We find nothing in the court's opinion to indicate that actual knowledge is required.

Waiver is at least very closely related to election. The Minnesota court has consistently held that constructive knowledge is sufficient to afford the basis for a waiver. Alsleben v. Oliver Corporation, Minn., 94 N.W.2d 354, 358; Carlson v. Doran, 252 Minn. 449, 90 N.W.2d 323, 328; Engstrom v. Farmers & Bankers Life Ins. Co., 230 Minn. 308, 41 N.W. 2d 422, 424.

The court made no specific finding on Seaboard's knowledge of the partnership. It does state (at page 647 of 153 F. Supp.):

> "After the plaintiff realized or suspected that the Nelsons' position was superior or greater than that of third parties financing H & R and that they were probably silent partners of H & R, it continued the arrangement of issuing the bonds only after H. C. Nelson executed the usual contracts providing for the advance of

money to H & R and for the furnishing of equipment to it on each of the jobs. * * *"

From this quotation and the opinion as a whole, it would appear that the court was of the opinion that the Nelsons had met the burden of the knowledge element of its defense, and that the court decided the election issue on the basis that Seaboard did not intend to deal with H & R alone. In any event, we are satisfied that the record conclusively shows that Seaboard had knowledge of the partnership at the time it accepted H & R applications for the Excelsior bond on December 14, 1953,[1] for the Shakopee bond on July 10, 1953, and for the Lummus bond on April 1, 1954. Prior to the execution of these applications Seaboard had received applications for the five earlier bonds, had obtained H & R's financial statement and had investigated it, and had insisted upon the Investment-H & R agreement as to each contract heretofore referred to.

It would appear that Seaboard would at least be put on inquiry as to what induced the Nelsons to make such a substantial commitment to H & R. Field, Seaboard's agent, in a letter to Seaboard dated June 24, 1953, stated in part:

> "As I told you over the phone, I discussed with Mr. Russ Johnson, an officer of the First National Bank of St. Paul, the comparative wealth of Mr Harry Nelson, who has been *the silent partner* in the construction company and has signed agreements with us on various jobs." (Emphasis added.)

Field made an unconvincing effort to explain that in said letter in using the word "partner" he meant "backer."

The important consideration is the plain meaning of the words used in the letter and not what Field might have intended to say. The letter unambiguously informed Seaboard that Nelson was the silent partner of H & R. After receipt of such letter in June 1953 Seaboard was

---

1. The Excelsior application was dated March 17, 1953. Field testified that it was not executed before December 14, 1953.

no longer in a position to claim want of knowledge of the partnership relationship between Nelsons and H & R. At the very least, the letter was sufficient to constitute constructive notice of the partnership. Field admitted that at least by December 1953 he knew the Nelsons were receiving 50 per cent of H & R's profits.

We find that Seaboard had knowledge of the partnership before it accepted the applications containing the indemnity agreement signed by H & R alone covering the Excelsior, Shakopee, and Lummus bonds.

This leaves for consideration the question of whether Seaboard after it had knowledge that the Nelsons were partners of H & R elected to deal exclusively with H & R and look to H & R alone for liability on the bonds and the indemnity agreement contained in the bond applications.

■ It is undisputed that H & R alone signed such bonds and bond applications. Under some authorities, as pointed out by the trial court, the acceptance of these papers with the signature of H & R alone, under the circumstances here existing, would be sufficient in itself to relieve the Nelsons. See 40 Am.Jur. Partnership, § 160, p. 423; 68 C.J.S. Partnership § 146, p. 581. The court, after stating that the Minnesota courts had not squarely decided this question, expresses the opinion that the Minnesota courts would hold that the entering into of a contract with an agent alone, with knowledge that there is a principal, is not conclusive of an intention not to hold the principal, but that such circumstance is a factor to consider in determining intention. We shall accept this as a permissible conclusion on the present status of Minnesota law. The court then determined that since H & R was not financially responsible it was unreasonable to suppose that Seaboard intended to waive the Nelsons' liability. However, Field testified that with the financing and leasing agreement obtained from the Nelsons, "We had an agreement here that gave us what the company and we thought was good underwriting agreements. * * *

As long as we had these, we had enough protection, we felt, for the company, and we didn't care what was going on between Nelson and Rohr."

In such a setting it is entirely reasonable to find that Seaboard voluntarily intended to waive any claim of partnership liability against the Nelsons. The trial court states (at page 647 of 153 F. Supp.):

"* * * If there had been some reason why the plaintiff might be willing to waive its rights against the Nelsons, that reason and the omission of all reference to the partnership in the written contract would be some evidence of a waiver. * * *"

The court then stated it could find no valid reason for a waiver. We believe that a valid reason for a waiver is clearly apparent. Seaboard's business is selling bonds. It no doubt desired to obtain the substantial bonding business involved in these transactions and to earn the premiums that would accrue. The Nelsons had refused to sign the bond applications, and it was necessary to take the applications as offered to obtain the business. By the time the last three bonds were issued a uniform practice had been established in handling this account over a period of years. The experience on the earlier bonds appeared to confirm Seaboard's judgment that the transactions as handled were satisfactory risks.

In Southern Surety Co. v. Plott, supra, a case factually similar to the case now before us, the court states (at page 700 of 28 F.2d):

"* * * Where one, with knowledge of a partnership elects to contract with an individual member of the partnership upon that member's exclusive credit, even though the contract is for the benefit of the partnership, the member contracted with and he alone is liable under the contract. * * *"

Supporting authorities are cited and discussed by the court in a well considered opinion. The court observes that in some earlier cases involving accommodation

sureties courts have extended themselves to relieve the surety, and then states (at page 700 of 28 F.2d):

" * * * In recent times there has developed a class of compensated sureties, with companies doing an extensive surety business for profit and the rules that so generally favored an accommodation surety have necessarily, and as we see it justly, been modified in the direction of being less lenient with the surety. Surely the equities of a situation would be less in the case of a compensated surety than in the case of an accommodation surety. Surety companies sell their credit for a stipulated price, and in equity should be on the same footing as a merchant who sells his goods on credit for a price that pays him a profit."

Seaboard is an experienced corporate surety, engaged in providing bonds for compensation as a business proposition. Seaboard is entitled to the indemnity it contracted for, but is not under the circumstances of this case entitled to a bonus, a partnership liability which it elected to waive. It did not contract for indemnity from H & R's partners. Since Seaboard, with knowledge of the partnership, let the matter of obtaining Nelsons' signatures to the bond applications drop after the Nelsons had refused to sign them and accepted the signature of H & R alone on the bonds and applications, we conclude that the only reasonable inference that can be drawn from the evidence is that Seaboard voluntarily and intentionally elected to deal with and rely upon H & R alone. Seaboard is not entitled to indemnity from the Nelsons for its bond losses. Seaboard is of course entitled to the benefit of the Investment-H & R agreement delivered to it as an inducement for the execution of each of its bonds.

3. Judgment.

With the foregoing principles in mind, we proceed to the consideration of the judgment entered from which this appeal is taken. We shall deal with the component parts of the judgment in the order followed by the trial court, using the paragraph number references assigned by the trial court in its judgment.

1–5. Paragraph 1 awards judgment to Rocket Transfer, Inc., for $1,743.63 with interest for services on the Shakopee job. Paragraph 2 awards judgment to Rocket Transfer, Inc., for $1,805.62 with interest for services on the Lummus job. Paragraph 3 awards judgment to J. V. Gleason for $1,400 with interest. Paragraph 4 awards judgment to Armco Drainage and Metal Products, Inc., for $6,628.03 with interest. Paragraph 5 awards judgment to Wm. H. Ziegler Co., Inc., for $1,245 with interest. All judgments are against H & R, H. C. Nelson, Sidney Nelson, and H. C. Nelson Investment Company. The judgments at paragraphs 1 and 5 are also against Seaboard,[2] based upon its liability upon the Shakopee bond.

The paragraphs 1 to 5 judgments must be reversed as to Sidney Nelson because of our finding that he is not a partner, and must be affirmed as to all other parties. None of the judgment creditors here involved had knowledge of the partnership, and hence the election defense does not apply to their claims.

6. Paragraph 6 awards Seaboard judgment for $164,920.79 with interest against H. C. Nelson, Sidney Nelson, H. C. Nelson Investment Company, H & R, and H. H. Rohr. H & R and H. H. Rohr have not appealed from this judgment so it remains effective as to them. In any event, the judgment against them is fully supported by the evidence. The liability of the Nelsons is based upon the partnership finding. Inasmuch as we have heretofore found that Sidney Nelson is not a partner, the judgment must be reversed as to him. The validity of the judgment

---

2. The judgments at paragraphs 2, 3, and 4 are not against Seaboard as they arose out of the Lummus job as to which Seaboard in its bond only undertook to satisfy liens, and no liens were filed as to claims involved in the paragraphs 2, 3, and 4 judgments.

against H. C. Nelson and Investment, who were found to be partners of H & R, depends upon the application of the election defense. An examination of the items upon which this paragraph of the judgment is based, which are set out in Conclusion of Law No. 7, shows that the judgment is composed of the following items:

a. Payment by Seaboard to claimants on the Excelsior bond, $4,751.80.

b. Payment by Seaboard to claimants on the Shakopee bond, $65,014.56.

c. Payment to holders of mechanics' liens on the Lummus contract, $28,127.57.

d. Due for use of Seaboard's three LaPlant-Choate 200's on the Lummus job, $13,750.

e. Payment of judgment awarded Rocket Transfer, Inc., against Seaboard in paragraph 1, $1,743.63.

f. Payment of judgment awarded Wm. H. Ziegler Co., Inc., in paragraph 5, $1,245.

g. For attorneys' fees and expenses incurred by Seaboard by reason of default in performance of contracts, $50,-288.23.

A careful examination of the law and the evidence leads us to the conclusion that Seaboard is foreclosed by its election to deal with H & R alone from recovering from Investment and H. C. Nelson upon all of the items comprising the paragraph 6 judgment except item d, for machinery use in the amount of $13,750. The judgment will be affirmed as to H. C. Nelson and Investment to the extent of $13,750. The court under this record was warranted in determining that the machinery involved in this item belonged to Seaboard and in making Finding No. XXIII, reading:

"That without the knowledge or consent of plaintiff, defendants H & R and the Nelsons knowingly and intentionally used three LaPlant-Choate 200 pieces of equipment belonging to the plaintiff in the performance of the Lummus contract for a total of 1,250 hours for which they have never accounted to the plaintiff. That the reasonable value of the use of said equipment was $11 per hour and that the defendants H & R, H. H. Rohr, H. C. Nelson, Sidney Nelson and the H. C. Nelson Investment Company, and each of them, are indebted to plaintiff in the sum of $13,750 for such use."

It seems clear that Seaboard's judgment as to item d is based on wrongful appropriation and use of its machinery, and is not based upon indemnity for losses incurred as a result of the bonds Seaboard issued.

In summary, the judgment rendered in paragraph 6 shall stand in its entirety against H & R and H. H. Rohr, and is reversed in its entirety as to Sidney Nelson. The judgment against H. C. Nelson and Investment is affirmed as to Seaboard's claim for $13,750 for the wrongful use of its machinery, and is in all other respects reversed. The reversal shall be without prejudice to Seaboard's claim for damages based upon Investment's alleged failure to carry out the Investment-H & R agreements, which issue will be discussed hereinafter.

7. The evidence and the court's findings of fact and conclusions of law support the judgment based thereon that Seaboard acquired title to all property listed in paragraph 7 of the judgment, as amended, stored at Foster Excavating Company yard, with the exception of the following items:

a. Three LaPlant-Choate Motor Scrapers Nos. 300.

b. Nelsons' one-half interest in one International Caterpillar Crawler Tractor.

c. Two Turnapulls, Model C-11.

Since the court found against Nelsons on the election issue, it held that Seaboard was entitled to all of the machinery described in paragraph 7 of the judgment whether it belonged to the Nelsons or H & R. As heretofore pointed out, the court committed error in determining that the indemnity agreements cover Nelsons' individual property. The three LaPlant-Choate Scrapers, along with Allis-

Chalmers HD-19 Tractor, No. 2525, hereinafter discussed at paragraph 10, were acquired by Investment in 1951 for $75,-000 as an aftermath of a much discussed unsuccessful Tschida-Nelson venture, the details of which are irrelevant here. It is established beyond question that Nelsons acquired full title to said machinery, which is the machinery described in the earlier Investment-H & R agreements furnished Seaboard. Nelsons leased this machinery to H & R by written lease, Exhibit S, calling for a rental of $7,500 per month. Our examination of Exhibit S satisfies us that the instrument is a lease with an option to purchase for $85,000, and that it is not a conditional sales contract. There is no evidence to establish that the option was ever exercised, and there is no substantial evidence to show that the option price was ever paid by means of rental payments. Nelsons handled H & R funds, but bills were paid only as directed by Rohr. No rental on this machinery is shown paid by either Nelsons' books or H & R's books.[3] The trial court in effect recognized this when it found at Conclusion of Law No. 13 that Nelsons were entitled to judgment from H & R, as a return of a capital contribution to the partnership, for $85,000, the value of this machinery. We find no substantial evidence to support a conclusion that this machinery was contributed to the partnership as capital, or that the machines were sold to H & R on credit.

Exception b pertains to Nelsons' one-half interest in the International Cat Crawler Tractor. The trial court made no finding as to ownership. Seaboard's brief admits Nelsons own one-half interest in this machine.

As to exception c, covering the two turnapulls, the evidence conclusively establishes these were owned by Nelsons. Seaboard in its brief does not claim that Nelsons do not own this equipment, but asserts that H & R had a lien upon the turnapulls for repairs, which lien was assigned to Seaboard. The trial court did not pass upon the validity of the lien.

The judgment contained in paragraph 7 is reversed as to the machinery described in exceptions a, b, and c, above, without prejudice to the consideration of Seaboard's claim as assignee of H & R for a lien for repairs made upon such machinery. As to all other machinery described in this paragraph, the judgment is affirmed.

8. Paragraph 8 determines that the bill of sale given by H & R to Nelsons covering a Northwest Dragline Shovel, which is included in the paragraph 7 property awarded to Seaboard, should be vacated, and orders the Nelsons to convey said dragline shovel to Seaboard as successor of H & R. The evidence is conflicting, but supports the trial court's findings and conclusions that no consideration was given for the bill of sale and that no credit was ever agreed upon or given H & R for said dragline shovel. The paragraph 8 judgment is affirmed.

9. Paragraph 9 awards to Seaboard $3,500, proceeds of sale of a Wooldridge Scraper, held by Seaboard's counsel pursuant to stipulation of parties pending establishment of their respective rights. Upon conflicting evidence the court found the scraper was purchased by H & R. This finding is supported by Rohr's testimony and the fact that H & R received a bill of sale from the purchaser. The purchase price was paid by Nelsons out of commingled funds. If Nelsons have not been paid the purchase price of the scraper, they are entitled to receive credit for the purchase price in their accounting with H & R. The paragraph 9 judgment is affirmed.

10. Paragraph 10 involves the proceeds of sale of two Allis-Chalmers Tractors, Nos. 2525 and 1381, deposited in the registry of the court. It is undisputed that Borchert-Ingersoll, Inc., has

---

3. Sidney Nelson, after the commencement of this action in 1955 and after he ceased to be an employee of H & R, made some entries as to rental payments and distribution of profits of earlier jobs, which the court properly found to be false entries.

a lien upon the tractors, and is entitled to $2,782.50 of the proceeds in satisfaction of its lien. The balance of the proceeds was awarded to Seaboard. Tractor 2525 was part of the LaPlant-Choate scraper transaction, discussed at paragraph 7. For the reasons there stated, we hold title to Tractor 2525 is in Nelsons. Tractor No. 1381 was owned by H & R, but was subject to a valid mortgage of $4,500 to a bank. Nelsons purchased this mortgage. Nelsons did not acquire title to this tractor by foreclosure or otherwise, but it is entitled to protection of its mortgage. The judgment in paragraph 10 is affirmed to the extent that it orders the payment of the Borchert-Ingersoll, Inc., lien, and is in all other respects reversed and remanded.

11. Paragraph 11 requires Nelsons to satisfy and discharge a mechanic's lien filed for machine rentals on the Lummus job. This judgment was likely based upon the court's holding that a partnership existed, and that Seaboard did not elect to rely on H & R alone. Our holding on the election issue requires further consideration of this judgment. The paragraph 11 judgment is reversed and remanded. To resolve the controversy upon remand, the court should interpret the Investment-H & R agreement, Exhibit R, furnished Seaboard as an inducement for the execution of the Lummus bond, with respect to whether such agreement bars Nelsons from asserting a mechanic's lien as against Seaboard for machinery which the agreement required Nelsons to furnish H & R.

12. Paragraph 12 provides that Nelsons are entitled to receive from the partnership the sum of $97,511.75, as a return of their contribution to partnership capital, and provides for the distribution of partnership profits and losses. Since we have heretofore rejected some of the court's findings as to capital contributions, including the $85,000 arising out of the LaPlant-Choate deal, this judgment must be reversed and remanded for reconsideration and recomputation of claims existing between the partners, in conformity with the views expressed in this opinion. The part of the judgment finding that Seaboard is not liable on its bond for the return of any capital contributions is affirmed.

13. Paragraph 13 dismisses the seven counterclaims filed by Nelsons against Seaboard. Counts 1 and 2 are based upon Nelsons' claim that Seaboard has collected sums due on the first four contracts, and that Nelsons are entitled to their agreed share of the profits as to such collections. Each of the eight contracts was a separate transaction. A separate indemnifying agreement and a separate Investment-H & R agreement were obtained before a bond was issued on each contract. Paragraph 7 of each indemnity agreement provides upon default for the assignment to Seaboard of all deferred payments, retained percentages, and claims for extras. Such language is broad enough to bind H & R, but there is doubt whether it is binding upon the Nelsons who are not signers of the indemnity agreements. Since the court found against Nelsons on the election issue, the court did not reach the issue just discussed. The dismissal of counts 1 and 2 should be vacated. Count 3 deals with damages claimed for conversion of certain Nelsons' equipment and involves rental claims. We have heretofore found that Seaboard has taken certain equipment belonging to Nelsons. The dismissal of count 3 should be vacated. The dismissal of count 4 is supported by the court's finding that Seaboard did not encourage or permit the dissipation of any partnership assets. Counts 5, 6, and 7 seek reformation of various written agreements entered into between H & R and Investment. We completely agree with the trial court's conclusion that Nelsons have failed to show that they are entitled to any reformation. The judgment dismissing Nelsons' counterclaims against Seaboard is affirmed as to counts 4, 5, 6, and 7, and reversed and remanded as to counts 1, 2, and 3.

14. Paragraph 14 dismisses Nelsons' first four crossclaims against H & R.

Nothing specific is said with reference to the fifth crossclaim. Counts 2, 3, and 4 seeking reformation of described written instruments were properly dismissed. Count 1 involves claims of Nelsons against H & R for machinery rentals. Count 5 seeks determination of the rights, obligations, and liability of H & R and Investment to each other. The dismissal of counts 1 and 5 should be vacated. The paragraph 14 judgment is affirmed as to the dismissal of counts 2, 3, and 4, and is reversed and remanded as to counts 1 and 5.

15. Paragraph 15 adjudges Seaboard to be the owner of all balances due on each of the eight contracts. Nelsons in their pleadings have asserted an interest only in the profits arising under the first four contracts, and have disclaimed any proprietory interest in the Normandale, Shakopee, Excelsior, and Lummus contracts. The judgment as to the first four contracts described in 15(a), (b), (c), and (d) is reversed and remanded for further consideration for the reasons set out in connection with the reversal and remand of counts 1 and 2 of the counterclaim in paragraph 13. The judgment is affirmed as to the contracts described in paragraph 15(e), (f), (g), and (h).

16. Paragraph 16 of the judgment releases the bonds executed by Seaboard upon fulfillment of specified conditions. Said judgment is affirmed with the modification that the release of the bonds shall not be effective as to claims of Nelsons against Seaboard which have been here established, or as to claims which have been remanded for further consideration.

4. Other issues.

Seaboard's complaint contains claims for damages by reason of Nelsons' alleged failure to provide capital and necessary machinery on each of the eight bonded jobs in accordance with the Investment-H & R agreement provided Seaboard as an inducement for the execution of each of its bonds. While the court found that Nelsons failed to live up to their agreements to provide capital and equipment on the Lummus and Shakopee contracts,

it did not determine the damages caused by such omission, doubtless because it had already found Nelsons obligated upon the indemnity agreements as a partner. Our holding on the election issue resulted in the reversal for the most part of the paragraph 6 judgment awarding Seaboard damages. Seaboard is entitled to have its damage claim described in this paragraph determined upon remand.

We have serious doubt whether Seaboard suffered any loss because of any omission of Nelsons to fulfill their obligations under the Investment-H & R agreements in connection with the first five jobs. However, upon remand, we believe that Seaboard is entitled to have all of its causes of action based upon violation of the Investment-H & R agreements considered. Such causes of action are in no way affected by our decision on the election issue.

Seaboard is also entitled to have its 9th and 12th causes of action considered by the court.

Sidney Nelson should remain as a party in this case only because he holds title to some machinery for the convenience of his father. It clearly appears that H. C. Nelson or Investment is the owner of all machinery so held. All claims against Sidney Nelson asserting partnership liability or liability by reason of the provisions of the Investment-H & R agreements are dismissed.

There is substantial evidentiary support for the court's finding that Seaboard did not encourage or permit the dissipation of partnership assets or separate assets of H & R and Rohr.

We note that Seaboard in its brief expressly disclaims that it is entitled to any relief on the basis of subrogation, and hence no discussion of the subrogation issue is required.

The trial court did not abuse its discretion in overruling Nelsons' motion for a new trial based upon alleged newly-discovered evidence.

This case, because of its complicated nature and long record, has caused coun-

sel, the trial court, and this court great difficulty. H & R funds were confusingly intermingled with Nelsons' funds in Nelsons' bank accounts. This practice made it almost impossible to determine whether checks were drawn on H & R funds or Nelsons' funds. The records kept by both Nelsons and H & R were extremely unsatisfactory and inadequate, and oral testimony offered in an effort to explain the accounting is also inconclusive and unsatisfactory. The court was justified in making the statement that the testimony of the Nelsons and of Rohr was indefinite, evasive, and unsatisfactory.

The court's conclusion that Nelsons' disbursements exceeded cash receipts by $2,761.75 cannot be demonstrated to be erroneous, and is likely as good a determination as can be made under this record. Our decision in this case will require some adjustments of this figure upon remand.

We have tried to finally dispose of all issues properly considered by the trial court and raised by this appeal. Our decision should be considered final as to items of the judgment affirmed or reversed without qualification. The issues involved in the portions of the judgment reversed and remanded should receive further consideration by the court in the light of the views expressed in this opinion. The trial court should have a large discretion as to the manner in which it will proceed to determine such issues, including the question of whether additional testimony will be received upon any or all of the undecided issues. We believe that our views as to the disposition of this case may best be determined from what we have heretofore said, and we shall forego prolonging this opinion with an attempt to summarize our decision.

Affirmed in part, reversed in part, reversed and remanded in part as set forth in the opinion.

Costs on appeal taxed one-half to Seaboard and one-half to H. C. Nelson and Nelson Investment Company.